PEOPLE v ARMSTRONG

1. HOMICIDE—MURDER—FIRST-DEGREE MURDER—SECOND-DEGREE
   MURDER—PLEA OF GUILTY—DEGREE HEARING—STATUTES—PAR-
   DON AND PAROLE—SENTENCES—MAXIMUM SENTENCE—MINIMUM
   SENTENCE.

   The Michigan Supreme Court could not properly say that a trial
   judge, who in 1963 accepted a plea of guilty to murder and did
   advise the defendant that if he were found guilty of first-degree
   murder a life sentence must be imposed, erred reversibly in
   failing to advise the defendant more fully as to the nature of
   an "open charge" of murder and that if he was convicted of
   first-degree murder he would be ineligible for parole; because at
   the time, neither the court rule nor case law required a judge
   to explain to a defendant offering to plead guilty to an open
   charge of murder the nature of the judge's responsibility at a
   hearing required by a statute to determine whether the murder
   was of the first or second degree, nor was there even a require-
   ment that the defendant be advised of the maximum and of
   any minimum sentence that might or must be imposed, let
   alone, that, if convicted of first-degree murder, he would not be
   eligible for parole (MCLA 750.318).

2. CRIMINAL LAW—PLEA OF GUILTY—HOMICIDE—MURDER—FIRST-DE-
   GREE MURDER—PARDON AND PAROLE—DEGREE HEARING—
   COURT RULES.

   The revised court rule providing for guilty plea procedure does
   not require advice concerning the nature of the judge's respon-
   sibility in a hearing required by a statute to determine whether
   the murder was of the first or second degree, or that a person
   convicted of first-degree murder is not eligible for parole
   (MCLA 750.318; GCR 1963, 785.3–785.11).

3. CRIMINAL LAW—PLEA OF GUILTY—TRIAL TESTIMONY—TRUTH OF
   PLEA.

   A judge who has heard testimony at trial implicating the defend-

REFERENCE FOR POINTS IN HEADNOTES
[1–8] 21 Am Jur 2d, Criminal Law §§ 459, 484–496.

ant is in a position to make a reasonable ascertainment of the truth of the plea of guilty.

4. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTANCE OF PLEA—COURT RULES—EVIDENCE—TRIAL TESTIMONY—ARMED ROBBERY—HOMICIDE—FINDINGS.

The amended court rule providing that a court shall not accept a plea of guilty "until it is satisfied that a crime was committed and, through personal interrogation of the defendant, that defendant participated therein" speaks to the typical situation where the defendant pleads guilty without a trial; the rule contemplates that the judge may consider evidence other than the defendant's own statements, and the testimony of witnesses, that the defendant had participated in an armed robbery and that he had killed the deceased, taken the first three days of trial before the defendant pled guilty provides "otherwise admissible evidence" substantially supporting a finding that the defendant was in fact guilty of the charged offense (GCR 1963, 785.7[3][b], 785.7[3][c]).

5. CRIMINAL LAW—PLEA OF GUILTY—EVIDENCE—RECORD—PLEA TAKING PROCEEDINGS—TRIAL—SUMMARY HEARING—COURT RULES.

The limitation of a court rule providing that a defendant's description of his actions and any otherwise admissible evidence be presented to the court on the record *during* the plea taking proceedings is inapplicable to a plea offered during a trial; the limitation is directed to the typical situation, a plea offered at a summary hearing, and is designed to preclude reliance on evidence the judge is not likely to have before him when he decides whether to accept the plea (GCR 1963, 785.7[3][c]).

6. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTANCE OF PLEA—TRIAL TESTIMONY—EXAMINATION OF ACCUSED—NEW TRIAL.

Use of trial testimony as an alternative to direct questioning of a defendant in establishing a factual basis for accepting a plea of guilty does not entitle defendant to a new trial.

7. CRIMINAL LAW—PLEA OF GUILTY—SUPREME COURT.

The Michigan Supreme Court cannot properly apply to a 1963 plea of guilty a standard more stringent than the standard presently in force.

8. CRIMINAL LAW—PLEA OF GUILTY—HOMICIDE—MURDER—FIRST-DEGREE MURDER—DEGREE HEARING—STATUTES—RECORD—TRIAL TESTIMONY.

The record shows that the court conducted a hearing required by

a statute to determine whether the murder was of the first or second degree, where after a plea of guilty to murder was offered and accepted it was agreed by the lawyers for the people and the defendant "that all the testimony that has been taken so far may be construed and entered as the testimony as bearing on the degree within the power of the law as to first-degree murder"; the proceedings then continued, 5 additional witnesses were sworn and the testimony covers 100 pages of transcript (MCLA 750.318).

Appeal from Court of Appeals, Division 2, McGregor, P. J., and Bronson and Danhof, JJ., denying application for leave to appeal from Genesee, Stewart A. Newblatt, J. Submitted September 5, 1973. (No. 13 October Term 1973, Docket No. 54,265.) Decided December 18, 1973.

James Willie Armstrong was convicted, on his plea of guilty, of first-degree murder. Defendant's application for leave to appeal was denied by the Court of Appeals. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Joseph B. Szeremet),* for defendant on appeal.

LEVIN, J. On the third day of trial James Willie Armstrong pled guilty to the charge that he murdered Ann Kelush in the perpetration of an armed robbery.

A statute provides that if a person shall be convicted of murder "by confession, the court shall proceed by examination of witnesses to determine the degree of the crime ["whether it be murder of

the first or second degree"], and shall render judg-
ment accordingly". MCLA 750.318; MSA 28.550.

On the next day, the judge announced that the
evidence established that Armstrong was guilty of
first-degree murder and, accordingly, that was his
determination of the degree of guilt.

Armstrong now asserts that his plea and resul-
tant conviction should be set aside because the
judge failed:

(a) to inform him of the nature of an "open
charge" of murder;

(b) to inform him that if he was convicted of
first-degree murder he would be ineligible for pa-
role;

(c) to establish a factual basis for the plea by
bench questioning;

(d) to conduct a hearing to determine the degree
of murder.

I

Armstrong asserts that an "open charge" of
murder is inherently uncertain. Unless carefully
explained by the judge, a defendant will naturally
be "misled" into believing that he will be con-
victed of an offense lesser than first-degree mur-
der, when in fact that hope is illusory. Specifically,
Armstrong asserts that he should have been ad-
vised that if the evidence were sufficient to estab-
lish first-degree murder, the judge must find that
the murder was of the first degree because he does
not enjoy the discretion to convict a person, who in
fact is guilty of the greater offense, of only the
lesser offense.

Armstrong further asserts that, although the
judge did inform him that if it was determined he
was guilty of first-degree murder a sentence of life

imprisonment must be imposed, the judge erred in failing to inform him that he would be ineligible for parole if the degree of guilt was determined to be first degree. Armstrong relies on the construction of FR Crim P, 11 adopted by a majority of the United States Courts of Appeals that ineligibility for parole constitutes a "consequence" of a guilty plea and, therefore, a failure to furnish such information in a case where the defendant would be ineligible for parole vitiates the plea.[1]

Armstrong's guilty plea was accepted in 1963. At the time, neither the court rule nor case law required a judge to explain to a defendant offering to plead guilty to an open charge of murder the nature of the judge's responsibility at a degree hearing. Nor, this Court subsequently ruled, was there even a requirement that the defendant be advised of the maximum and of any minimum sentence that might or must be imposed *(People v Dunn,* 380 Mich 693; 158 NW2d 404 [1968]), let alone that, if convicted of first-degree murder, he would not be eligible for parole.

In that setting, we could not properly say that the trial judge in this case, who did advise the defendant that if he were found guilty of first-degree murder a life sentence must be imposed, erred reversibly in failing to advise the defendant more fully. The extensive guilty plea jurisprudence of this state shows that the word "consequence", in GCR 1963, 785.3(2), did not acquire, before the recent revision of that rule, the meaning given that word in other jurisdictions.[2]

After much debate among Bench and Bar, this Court recently revised the guilty plea procedure to

---

[1] *See Moody v United States,* 469 F2d 705, 707, n 5 (CA 8, 1972).

Rule 11 requires that the defendant have an understanding of both "the nature of the charge and the consequences of the plea".

[2] The word "consequence" is not used in the present rule.

require more extensive advice than under former practice to guilty pleading defendants. See GCR 1963, 785.3–785.11. The revised rule does not require advice concerning the nature of the judge's responsibility in a degree hearing or that a person convicted of first-degree murder is not eligible for parole. It would be incongruous to hold that a defendant pleading guilty in 1963 was entitled to advice that need not be given a defendant pleading guilty today.

## II

In accepting Armstrong's plea, the judge did not, in accordance with *People v Barrows,* 358 Mich 267, 272; 99 NW2d 347 (1959), establish by "direct questioning" of the defendant "the crime and the participation therein of the person pleading guilty".

Armstrong's plea was offered after three days of trial at which witnesses testified that Armstrong had participated in the armed robbery and that he had held a revolver to Mrs. Kelush's head and killed her.

Armstrong relies on a footnote in *People v Taylor,* 387 Mich 209, 225, n 10; 195 NW2d 856 (1972), which states that it is not sufficient that the requisite facts appear on the record of a preliminary examination. There is, however, considerable difference between the record of a preliminary examination and a trial record. In many cases a preliminary examination record will not be typed before the plea is taken and even if it is typed the judge may not read it.

We are of the opinion that where the judge has heard testimony at trial implicating the defendant he is in a position to make a "reasonable ascer-

tainment of the truth of the plea". *People v Bar-rows, supra,* p 272.

While the amended court rule provides that the court shall not accept a plea of guilty "until it is satisfied that a crime was committed and, through personal interrogation of the defendant, that defendant participated therein"[3] the rule speaks to the typical situation where the defendant pleads guilty without a trial.

The new rule contemplates that the judge may consider evidence other than the defendant's own statements; the immediately following subsection provides that "[i]f defendant's description of his actions and *any otherwise admissible evidence* presented to the court on the record during the plea taking proceedings would not substantially support a finding that defendant is in fact guilty of the charged offense or the offense to which he is pleading, the plea shall be rejected by the court."[4] (Emphasis supplied.)

The testimony of three days of trial provides "otherwise admissible evidence" substantially supporting a finding that the defendant was in fact guilty of the charged offense. Although this testimony was not a part of the record made "during" the plea taking proceeding, that limitation is inapplicable to a plea offered during a trial. The limitation is directed to the typical situation, a plea offered at a summary hearing, and is designed to preclude reliance on evidence the judge is not likely to have before him when he decides whether to accept the plea.

In establishing a factual basis, the use of trial testimony as an alternative to direct questioning of the defendant, does not entitle the defendant to

---

[3] GCR 1963, 785.7(3)(b).

[4] GCR 1963, 785.7(3)(c).

a new trial. We cannot properly apply to a 1963 plea a standard more stringent than the standard presently in force.

## III

The defendant's final claim, that the judge did not conduct a degree hearing, is refuted by the record.

After the defendant's plea of guilty was offered the judge said: "I will accept your plea of guilty to the charge but will not make a determination at this time as to the degree of that charge, being compelled to hold a hearing under the laws of the State of Michigan to determine and verify the validity of the charge made against you." The judge added that "this hearing in this cause will be continued as the hearing on the plea". It was agreed by the lawyers for the people and the defendant "that all the testimony that has been taken so far may be construed and entered as the testimony as bearing on the degree within the power of the law as to first-degree murder".

The proceedings then continued. Five additional witnesses were sworn and the testimony covers 100 pages of transcript.

Affirmed.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with LEVIN, J.