James W. ARMSTRONG,
Petitioner-Appellant,

v.

Charles E. EGELER, Warden,
Respondent-Appellee.

No. 77–1016.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1977.

Decided Oct. 10, 1977.

Gregory Drutchas, Kitch & Suhrheinrich, Richard R. DeNardis, Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Robert A. Derengoski, Sol. Gen., Thomas L. Casey, Asst. Atty. Gen., Lansing, Mich., for respondent-appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

In this appeal we are called upon to decide whether a plea of guilty to murder, otherwise voluntarily and intelligently made, must nonetheless be set aside as violative of the petitioner's rights to due proc-

ess because the record of the plea is silent on whether the petitioner knew that the mandatory penalty of life imprisonment was not subject to parole. Upon the facts of this case, we hold that due process was not offended by the state trial judge's failure specifically to inform petitioner of this fact and affirm the judgment of the district court.

Petitioner James W. Armstrong was brought to trial in the Circuit Court for the County of Genesee, Michigan, on the charge that on June 23, 1962, he shot and killed one Ann Kelush, a cashier, in the course of the armed robbery of a grocery store in the city of Flint.

At the time of Armstrong's conviction, Mich. Comp. Laws § 750.316 provided:

FIRST DEGREE MURDER—All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life.

During the third day of Armstrong's jury trial, he indicated to his counsel that he desired to plead guilty to the charge.

Under Mich. Comp. Laws § 750.318, a person charged with murder and desirous of pleading guilty, pleads guilty to the "open" charge and the court thereupon proceeds to a hearing to determine whether it should be in the first or second degree:

The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree; but, if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly. All testimony taken at such examination shall be taken in open court and a typewritten transcript or copy thereof, certified by the court reporter taking the same, shall be placed in the file of the case in the office of the county clerk.

Although responsibility for determining the degree of crime is vested in the trial judge under § 750.318, it is apparent from § 750.316 that a felony murder is in fact murder in the first degree and calls for the maximum penalty. Michigan law makes no provision for the parole of persons convicted of first degree murder. Mich. Comp. Laws § 791.234; see, e. g., Richardson v. Hatch, 134 F.Supp. 110, 112 n.1 (W.D.Mich. 1955).

After receiving Armstrong's plea of guilty, the state trial judge discharged the jury and proceeded to take further testimony concerning the degree of guilt. On the following day, he announced that the evidence established that Armstrong was guilty of first degree murder and sentenced him to life imprisonment.

Armstrong's conviction was affirmed by the Michigan Supreme Court, *People v. Armstrong,* 390 Mich. 693, 213 N.W.2d 190 (1973). To Armstrong's claim that he was not informed at the time of his plea that a conviction of first degree murder would make him ineligible for parole, the Michigan Supreme Court held that, both at the time of his plea in 1963 and at the time of its decision ten years later, the applicable Michigan law and court rules did not require the defendant to be advised that one convicted of first degree murder was not eligible for parole.

■ Essentially the same claim was made in a petition for writ of habeas corpus subsequently filed in the district court. The petition, more carefully couched in terms of due process violations of the Fourteenth Amendment, asserted that the plea of guilty was not freely, understandingly and voluntarily made because petitioner had not been informed that one of the consequences of his plea would be ineligibility for parole on a conviction of first degree murder. In a carefully considered opinion, District Judge John Feikens denied the state's motion to dismiss and ordered an

evidentiary hearing "to determine whether petitioner was aware of his ineligibility for parole and whether under the totality of the circumstances he knowingly and intelligently waived his rights." *Armstrong v. Egeler,* 389 F.Supp. 483, 485 (E.D.Mich. 1975).

At the hearing the district court heard the testimony of the trial judge who took the plea, of petitioner's defense counsel at the time, of the prosecutor at the trial, and of petitioner himself. He also had available the transcript of the plea-taking procedure itself. Not surprisingly in view of the passage of time, the defense counsel could not recall whether he had in fact informed Armstrong of his ineligibility for parole. Armstrong himself testified that he did not know the Michigan law at the time of his plea, but assumed that he was eligible for parole. He also testified that he would not have pleaded guilty if he had not made the assumption. The state trial judge himself, while remembering the petitioner, acknowledged that if the record was silent on the point, he probably did not expressly tell Armstrong that conviction of first degree murder rendered him ineligible for parole.

Notwithstanding the foregoing testimony in the district court, Judge Feikens, recognizing that the issue was whether petitioner's plea was intelligent and voluntary within the meaning of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), concluded that the colloquy at the time of the plea in 1963 established that Armstrong was sufficiently informed of the consequences of the plea and left no reasonable basis for any assumption on the part of Armstrong that he might ever be eligible for parole:

Q Is it correct that you desire to enter a plea of guilty to the charge contained in this Information at this time?

A Yes, sir, I do.

Q You understand that the charge contained in this Information is first degree murder, that is based upon the felony murder statute, that the penalty for this is solitary confinement at hard labor in State Prison for life?

A Yes, sir, Your Honor.

Q Do you understand this?

A Yes, sir.

\* \* \* \* \* \*

Q Have you consulted with your counsel about this?

A Yes, sir, Your Honor.

Q You know that you have a right to continue with this trial, with a trial? You might possibly have a right to continue with this trial without the jury. Do you understand that?

A Yes, Your Honor.

Q Now knowing with what you are charged, knowing the maximum penalty that could be imposed, having consulted with your attorney, how do you wish to plead?

A Guilty, sir.

MR. JOSEPH: Your Honor, may I interrupt a minute?

THE COURT: Yes.

MR. JOSEPH: I think only for the purposes of a record that the Court used the term to the defendant maximum penalty that could be imposed; for the purpose of the record, I think that it should be shown that at least, in my opinion, the sentence that the Court stated is the sentence that must be imposed.

THE COURT: Yes. I think that is a good point, Mr. Joseph.

Q BY THE COURT: Before we proceed, do you understand that if you are determined guilty of the charge of first degree murder there is no discretion in this court, that the sentence that this Court must impose will be life imprisonment?

A Yes.

Q You understand that?

A Yes.

Q Are you pleading guilty freely and voluntarily?

A Yes, sir, I am.

Q Has anyone threatened you in any way to get you to plead guilty?

A No, sir.

Q  Has anyone exerted any force or pressure in any form on you in order to get you to plead guilty?

A  No, sir.

Q  Has anyone threatened you to get you to plead guilty?

A  No, sir.

Q  Has anyone made any promises of favor or leniency in order to get you to plead guilty?

A  No, sir.

Q  Then I take it that you are pleading guilty because, as charged in the Information, you did, on June 23, 1962, in the city of Flint, kill one Ann Kelush?

A  Yes, sir.

Q  Very well, I will accept your plea of guilty to the charge  .  .  ..

The facts of this case are a far cry from those of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). There the defendant, an indigent 27-year old Negro, appeared before the trial court with appointed counsel and pled guilty to five indictments charging him with common law robbery, an offense punishable in Alabama by death. The trial court asked no questions of the defendant concerning his plea. There was no indication that defendant in any way addressed the court. Other than a bare notation that Boykin had appeared before the court and pled guilty, the record was silent.

Here the record is not at all silent. Instead it affords an ample basis for the district judge's determination that Armstrong's plea of guilty was intelligent and voluntary. We view the following language from *Boykin* as significant:

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and

applicable to the States by reason of the Fourteenth. *Malloy v. Hogan,* 378 U.S. 1, [84 S.Ct. 1489, 12 L.Ed.2d 653]. Second, is the right to trial by jury. *Duncan v. Louisiana,* 391 U.S. 145, [88 S.Ct. 1444, 20 L.Ed.2d 491]. Third, is the right to confront one's accusers. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record. (Footnote omitted)

*Boykin v. Alabama, supra,* 395 U.S. at 243, 89 S.Ct. at 1712.

██  Neither in the quoted language nor elsewhere in *Boykin* does it appear that a precise knowledge of all of the penal ramifications rises to the quality of a constitutional requirement.[1] Recognizing that the voluntariness and intelligence of a plea of guilty depends upon an understanding of its consequences, *e. g., Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), we nevertheless are unwilling to hold, as a constitutional requirement applicable in habeas corpus cases to state prosecutions, that a guilty plea requires any precise litany for its accomplishment.[2] Here, as Judge Feikens found, the state trial judge in the clearest terms advised the defendant that he was subject to the maximum penalty of solitary confinement at hard labor in a state prison for life. He stressed that "there is no discretion in this court" and that "the sentence that this Court *must* impose will be life imprisonment." (emphasis added).

Judge Feikens' opinion noted:

Was it reasonable for petitioner to assume that "solitary confinement at hard labor in State Prison for life" included the possibility of parole? No evidence was presented to this court that would establish any reasonable basis for such an assumption. An individual who is advised that he would be placed in solitary confinement at hard labor for life can

---

1. The parties to this appeal do not address the retroactivity of *Boykin.* But *see generally Hendron v. Cowan,* 532 F.2d 1081, 1083 (6th Cir. 1976) and cases cited therein.

2. While the Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), established precise minimal standards for determining the constitutionality of confessions, it has made no such effort in the field of guilty pleas.

only conclude that this would be for the duration of his life. Petitioner was emphatically told this by Judge Newblatt, that is, that he would be confined to prison for life.

The requirement that a plea be intelligently and voluntarily made does not impose upon the trial judge a duty to discover and dispel any unexpressed misapprehensions that may be harbored by a defendant. This is especially true as to mistaken assumptions for which there is no reasonable basis.

In weighing the disputed evidence, the district court was not clearly erroneous in finding that any expectation of parole eligibility harbored by the defendant was unreasonable under the circumstances. The district court was not bound to accept Armstrong's testimony years later in the face of the colloquy which took place at the time of the plea.

We agree with the district judge here that the defendant at the time he entered his plea was sufficiently informed of the consequences to enable him to make an intelligent judgment concerning whether he should plead guilty.

In so ruling, we recognize that the federal rule may be different. Until its recent amendment effective December 1, 1975, Rule 11, Fed.R.Crim.P., provided that a district court should not accept a plea of guilty until it is satisfied that "the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." In accord with the majority of other circuits, our circuit held that the language cited required that a defendant be informed during the plea-taking procedure of his ineligibility for parole. *Harris v. United States,* 426 F.2d 99, 101 (6th Cir. 1970); *see Wolak v. United States,* 510 F.2d 164, 166 (6th Cir. 1975) (per curiam). As amended, the rule requires that the defendant must be informed of the "mandatory minimum penalty provided by the law," Rule 11(c)(1). *Accord,* ABA Standards Relating to Pleas of Guilty, § 1.4(c)(ii) (Approved Draft 1968). Whether this language imposes a requirement similar to the old is

not yet decided. *See generally, Ruip v. United States,* 555 F.2d 1331, 1336 (6th Cir. 1977). Our circuit, however, has expressly held that Rule 11 does not apply to state court proceedings. *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.), *cert. denied* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *Lawrence v. Russell,* 430 F.2d 718, 721 (6th Cir. 1970), *cert. denied* 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971).

Petitioner principally relies on *Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364 (4th Cir.), *cert. denied* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973), and *United States ex rel. Pebworth v. Conte,* 489 F.2d 266 (9th Cir. 1974). We find *Cuthrell* unpersuasive and *Pebworth* inapposite.

We recognize that dicta in *Cuthrell,* 475 F.2d at 1336, tend to indicate that ineligibility for parole is a "direct" as opposed to "collateral" consequence of a guilty plea requiring advice to the defendant. We decline, however, to endorse the dicta as a constitutional requirement in this circuit. Significantly, the only authority cited by *Cuthrell* as support are *federal* cases decided under Rule 11: *Moody v. United States,* 469 F.2d 705, 708 (8th Cir. 1972); *Paige v. United States,* 443 F.2d 781, 782–83 (4th Cir. 1971).

In *United States ex rel. Pebworth v. Conte, supra,* the Ninth Circuit remanded to the district court for an evidentiary hearing on petitioner's claim in a habeas corpus action "to determine whether he knew the direct consequences of his plea; that is, the range of allowable punishments thereunder." 489 F.2d at 268. Unlike the petitioner in *Pebworth,* however, Armstrong unquestionably knew the maximum possible prison term before tendering his plea. *Compare id.* at 267.

We recognize that the standard for determining the validity of a state court plea of guilty is whether the plea represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Whether a specific guilty plea was in fact voluntarily and intelligently made

"can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Our examination of the circumstances confirms the district court's conclusion that Armstrong's plea was not constitutionally defective.

The State of Michigan may in its wisdom elect to follow more stringent requirements for the taking of a plea of guilty than are evidenced by the record in this case. *See generally* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977). We have been shown, however, no persuasive authority that the substantial precautions contained in the record here do not comport with the federal constitutional requirements.

Affirmed.

CELEBREZZE, Circuit Judge (dissenting).

The issue squarely presented by this appeal is whether knowledge and understanding by a criminal defendant that he will be ineligible for parole are constitutionally required for a plea of guilty to a crime for which parole is not available. Cases of both the Supreme Court of the United States and this Court compel an affirmative answer. I respectfully dissent.

A plea of guilty constitutes a waiver of several constitutional rights and consequently must be made voluntarily and intelligently. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[1] In particular, to be voluntary and intelligent, a "plea of guilty shall not be accepted unless made voluntarily after proper advice and with *full understanding of the consequences.*" *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), quoting *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (emphasis added).

*See also Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Just over a year ago, the Supreme Court reemphasized that a guilty plea must be voluntary and intelligent in *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). More specifically, "[the defendant] must be informed of the *consequences* of his plea . . .." 426 U.S. at 650, 96 S.Ct. at 2260 (White, J., concurring) (emphasis added). It was stated that *Boykin, Machibroda* and *Kercheval* "set forth a three-pronged test: The plea of guilty must be made voluntarily, it must be made after proper advice, and it must be made with *full understanding of the consequences.*" 426 U.S. at 653, 96 S.Ct. at 2261 (Rehnquist, J., dissenting) (emphasis added).

Against this background of general principles of federal constitutional law, the facts of this case are governed by *Harris v. United States,* 426 F.2d 99 (6th Cir. 1970). *See also United States v. Wolak,* 510 F.2d 164 (6th Cir. 1975), following *Harris.*[2] In *Harris,* the defendant entered a plea of guilty to an offense for which ineligibility for parole was a statutory consequence. This Court noted then that four other circuits had "held that ineligibility for parole is a *'consequence'* of a plea of guilty of which a defendant must be apprised to permit a finding that his proffered plea is *voluntary.*" 426 F.2d at 100 (emphasis added). This Court expressly chose to "align" itself with those circuits. *Id.* at 101. We stated that

[i]neligibility for parole consideration, like ineligibility for a concurrent sentence, affects the length of incarceration. Accordingly, we conclude that a defendant indicted for [an] offense *does not voluntarily* plead guilty with knowledge of the *consequences* of his plea if he is unaware of his ineligibility for parole. *Id.* at 101 (footnote omitted) (emphasis added).

---

**1.** The majority distinguishes the facts of this case from those of *Boykin.* Such an exercise is irrelevant. The importance of *Boykin* stems not from its peculiar facts but from the constitutional principles set forth therein.

**2.** This is the overwhelming majority result among the circuits. *See* 8 A.L.R.Fed. 760.

While the appeal in *Harris* was couched in terms of a violation of Federal Rule of Criminal Procedure 11, the above language demonstrates that Rule 11 was not necessary to the result. We held that the plea was not *voluntary* and voluntariness is the constitutional standard. We held that the plea was made without knowledge of its *consequences*, which also expresses the constitutional standard. The use of the term "consequences" may have been inspired by its existence in the pre-1975 amendment version of Rule 11,[3] but there is no reason to believe that "consequences" means anything different in a Rule 11 context than it does in a constitutional context. The pre-1975 amendment version of Rule 11 simply expressed the constitutional standard by requiring that a defendant understand "the consequences of the plea." Thus, lack of knowledge of ineligibility for parole makes a guilty plea invalid under the standards of both Rule 11 and the Constitution.[4]

This demonstrates the flaw in the logic employed by the majority. The majority correctly reads *Harris* to speak in terms of Rule 11. They also correctly note that Rule 11 does not apply in state courts, citing *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.), *cert. den.* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975), and *Lawrence v. Russell,* 430 F.2d 718, 721 (6th Cir. 1970), *cert. den.* 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed. 823 (1971). But it does not follow from these two propositions, as the majority concludes, that the *Harris* result does not apply in state courts because, while it relied on Rule 11, it also expressed the federal constitutional standard. *Roddy* states only that the *"precise terms* of Rule 11 are not constitutionally applicable to the state courts." 516 F.2d at 1383 (emphasis added). *See also Lawrence,* 430 F.2d at 721, to the same effect. Constitutional provisions apply fully in state courts and are not excepted by also being embodied in Rule 11.[5]

The importance of parole to a criminal defendant cannot be denied. Parole was held to be a significant liberty interest deserving the protections of due process in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The reason is that it "affects the length of incarceration." *Harris, supra,* 426 F.2d at 101. Parole is so common that the average defendant surely expects it to be available to him.[6] *Moody v. United States,* 469 F.2d 705, 708 (8th Cir. 1972); *Durant v. United States,* 410 F.2d 689, 692 (1st Cir. 1969). The statement of the District Court, adopted by the majority, that Appellant had no reasonable basis for assuming he would be eligible for parole cannot be true. Since expectation of parole eligibility is so common, in the rare cases where it is unavailable, it is necessary to inform the defendant of this fact in order for him to fully understand the consequences of his plea.

The proper course in this case would normally be to remand to the District Court for a hearing to determine whether Appellant actually understood his ineligibility for parole at the time he entered his plea.[7] The

---

**3.** Before a 1975 amendment, Rule 11 read in part as follows:

> The court . . . shall not accept [a plea of guilty] without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.

**4.** In *United States v. Wolak,* 510 F.2d 164, 166 (6th Cir. 1975), this Court used the word "consequences" twice in the same paragraph, once referring to *Harris* and once referring to the constitutional standard of voluntariness expressed in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1969). This demonstrates that "consequences" means the same thing in both the Rule 11 and constitu-

tional contexts, or, alternatively, that *Harris* rested upon constitutional principles.

**5.** "The substance of the inquiry [required in state court to pass constitutional scrutiny] will, of course, be analogous to a Rule 11 colloquy." *Wade v. Coiner,* 468 F.2d 1059, 1060 (4th Cir. 1972).

**6.** Michigan allows for parole in all cases where an indeterminate sentence is meted out, including a sentence of a term of years to life. Mich. Comp.L.Ann. § 791.234. Thus, parole is generally available in Michigan.

**7.** In the case of a plea entered subsequent to *Boykin,* that understanding must appear affirmatively on the record. Since this plea oc-

District Court already held such a hearing, however, and it failed to resolve this issue. Instead, it concluded that whether or not Appellant actually held such a belief was irrelevant, basing its denial of relief on its conclusion that such a belief would be unreasonable. Appellant testified that he was unaware of his ineligibility for parole. While that alone is far short of establishing that fact, there is no evidence to the contrary. The record of the plea hearing is silent on the point and the sentencing judge testified that if it was not in the plea hearing record then he probably did not advise Appellant of his ineligibility. Defense counsel could not recall informing Appellant of his ineligibility. Thus, the Government could not conceivably meet its burden of showing voluntariness,[8] making remand unnecessary. I would reverse and order the granting of the writ of habeas corpus.[9]

curred before the decision in *Boykin*, Appellant's understanding did not necessarily have to be laid out on the record. *See Hendron v. Cowan*, 532 F.2d 1081, 1083 (6th Cir. 1976), which the majority cites for the proposition that *Boykin* will not be applied retroactively. While *Hendron* does contain language to that effect, the cases cited for that proposition, *Scranton v. Whealon*, 514 F.2d 99, 101 (6th Cir. 1975), and *Lawrence v. Russell*, 430 F.2d 718, 720–21 (6th Cir. 1970), do not so hold. *Scranton* and *Lawrence* held only that *Boykin* did not require Rule 11 to be applied retroactively. While I consider the retroactivity of *Boykin* unsettled, it is unnecessary to decide that issue here. Even under *Kercheval*, decided in 1927, and *Machibroda*, decided in 1962, a defendant had to fully understand the consequences of his plea, which cannot be demonstrated in this case even by going outside of the record. *See* footnote 8 and accompanying text, *infra*.

8. "The burden as to voluntariness is on the Government." *Harris, supra,* 426 F.2d at 101.

9. This result would not open the floodgates to similar habeas petitions. Since parole is so widely available, there can be only relatively few people presently incarcerated after entering a plea of guilty to an offense for which parole was not available with the defendant being unaware of that fact. This case, for example, involved a plea of guilty to the most serious offense of which Appellant could have been convicted after trial, i. e., first degree murder. The trial judge himself was surprised that someone would plead guilty to the most serious offense possible and he indicated that he had never seen such a plea before.