Thomas BERRY, Jr.,
Petitioner-Appellant,

v.

Barry MINTZES, Warden,
Respondent-Appellee.

No. 82–1150.

United States Court of Appeals,
Sixth Circuit.

Argued March 7, 1983.

Decided Feb. 2, 1984.

David M. Lawson (argued), Southfield, Mich., for petitioner-appellant.

Andrea L. Solak, Asst. Pros. Atty., A. George Best (argued), Asst. Pros. Atty., Detroit, Mich., for respondent-appellee.

Before WEICK, CELEBREZZE and PECK, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

On May 18, 1964, Thomas Berry, Jr., with the advice of court-appointed counsel, waived his right to a trial by jury and entered a plea of guilty to the open charge of murder in the Recorder's Court of the city of Detroit, Michigan.[1] At the close of the hearing held to determine the degree of the offense, the trial judge found Berry

---

1. The plea of guilty to an open charge of murder is provided for statutorily in Mich.Comp. Laws § 750.318, which in relevant part states:

The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree; but, if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly.

guilty of first degree murder. Berry exhausted state remedies and unsuccessfully filed three petitions for a writ of habeas corpus in federal court prior to filing in 1980 the instant petition in the District Court for the Eastern District of Michigan. Following an evidentiary hearing, District Court Judge Avern Cohn denied the petition in an order and judgment filed on December 21, 1981. *Berry v. Mintzes,* 529 F.Supp. 1067 (E.D.Mich.1981). Berry appealed to this court.

The primary issue raised by this appeal is whether Berry's guilty plea was made voluntarily and knowingly in view of the alleged insufficiencies in the information imparted to Berry prior to the acceptance of his plea and the imposition of sentence. Because we hold that Berry's plea was made voluntarily, we affirm the judgment of the district court.

## I. Background

■ Central to this case is Berry's plea of guilty to an open charge of murder pursuant to Mich.Comp.Laws § 750.318.[2] Under Michigan law, when a defendant enters such a plea, the trial judge conducts a record hearing to determine whether the crime committed was first or second degree murder. *People v. Grillo,* 319 Mich. 586, 30 N.W.2d 284 (1948); *People v. Middleton,* 22 Mich.App. 694, 177 N.W.2d 652 (1970). *See generally People v. Machus,* 321 Mich. 353, 32 N.W.2d 480 (1948). If, based on the evidence adduced at the hearing, the trial judge determines that a conviction for manslaughter but not murder is warranted, the trial judge is required to refuse to accept the plea of guilty to the charge of murder but rather must allow the defendant to plead guilty to a charge of manslaughter.[3] *People v. Middleton, supra.*

On October 25, 1963, Berry was arrested and arraigned on a criminal warrant charging him with first degree murder. On October 29, 1963, counsel was appointed to represent Berry. On November 4, 1963, following a preliminary hearing, Berry was bound over for trial on the first degree murder charge. On December 11, 1963, Berry, after being arraigned on an information charging him with first degree murder, pleaded not guilty.

On May 18, 1964, Berry, who was accompanied by counsel, appeared before the Recorder's Court, waived his right to a jury trial, and indicated that he wished to plead guilty to an open charge of murder which would allow the trial judge to determine the degree of the offense. Several times during the proceeding, in response to questions concerning whether he had been informed of and was aware of his rights Berry answered affirmatively. Berry also stated on the record at several points that he was entering his plea voluntarily and not in reliance on any promises of benefit or reward. Berry also was informed several times on the record that under a plea of guilty to an open charge of murder the trial judge could convict him of manslaughter or of first or second degree murder. During the record hearing, Berry, his codefendant, and several prosecution witnesses testified, and Berry's confession that he had killed the victim with a knife was introduced into evidence. The substance of Berry's testimony and of his counsel's argument was that Berry had killed his victim accidentally

**2.** Berry's petition alleged five errors, including, among others, that the information violated due process due to vagueness and that Berry was denied his rights to appeal and to effective assistance of appellate counsel. On appeal, Berry contends only that his guilty plea was involuntary because made without an understanding of the nature of the charge to which he pleaded, without an understanding of the consequences of the plea, and without admission of intent.

**3.** In Michigan, murder and manslaughter are separate crimes:

Murder is criminal homicide committed with malice aforethought. Manslaughter is criminal homicide committed without malice aforethought.

*People v. Allen,* 39 Mich.App. 483, 501 n. 17, 197 N.W.2d 874, 884 n. 17 (1972) (Levin, J., dissenting), *rev'd,* 390 Mich. 383, 212 N.W.2d 21 (1973) (per curiam) (adopting as opinion of court the dissenting opinion of Judge Levin). *Accord People v. Bryant,* 43 Mich.App. 659, 663–64, 204 N.W.2d 746, 748 (1972).

rather than intentionally. The prosecution's argument was that the killing, which took place during a robbery, was intentional. At the conclusion of the hearing, the trial judge accepted Berry's plea of guilty to the open charge of murder and found him guilty of first degree murder. On July 2, 1964, Berry was sentenced to life imprisonment without eligibility for parole.

## II. Procedural Issues

The sole substantive issue raised by this appeal is whether Berry was denied due process in his entry of a plea of guilty to the open charge of murder. The state contends that under the provisions of Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts, the merits of this issue should not be reached due to Berry's delay in filing the instant petition and because the issue had been resolved on the merits in previous petitions. Berry responds that the state's contention, which was rejected by the district court, has not been preserved for review because the state has failed to file an appeal or cross-appeal. Both the state's and Berry's positions are meritless.

The parties agree both that the state neither appealed nor cross-appealed the district court's judgment dismissing Berry's petition and that the district court rejected the state's contention that Rule 9 required the dismissal of Berry's petition. Berry argues that the "inveterate and certain" rule articulated in *United States v. American Railway Express Co.,* 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924), bars the state from raising the Rule 9 argument because the argument attacks the judgment of the district court.

In *Massachusetts Mutual Life Insurance Co. v. Ludwig,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976), the Supreme Court reaffirmed the following statement of the "inveterate and certain" rule:

It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

*Id.* at 480–81, 96 S.Ct. at 2159 (quoting *American Railway Express, supra,* 265 U.S. at 435, 44 S.Ct. at 563–564) (footnote omitted). The state's argument that Rule 9 requires dismissal of Berry's petition is no more than "an attack upon the reasoning of the lower court" which requires neither appeal nor cross-appeal. *Massachusetts Mutual Life Insurance, supra,* 426 U.S. at 481, 96 S.Ct. at 2159; 9 Moore's Federal Practice ¶ 204.11[3]. Accordingly, we turn to the state's Rule 9 arguments.

Rule 9 provides as follows:

(a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

The state argues that under subsection (a) the district court was required to dismiss Berry's petition upon a showing of prejudice to the state in its ability to respond to Berry's petition. The state, relying upon

the Advisory Committee Note to Rule 9, then argues that when a habeas corpus petition is filed more than five years after the time of judgment of conviction, as in the instant case, prejudice to the state is presumed, although the presumption is rebuttable. The state finally asserts that Berry did not rebut the presumption of prejudice.

The state's argument fails on several counts. First, the presumption of prejudice arising from a delay of more than five years in filing the petition for habeas corpus relief was eliminated from Rule 9 in 1976. Pub.L. 94–426, § 2(7), 90 Stat. 1335 (1976), [1976] U.S.Code Cong. & Ad.News 2478, 2485. *See LaLande v. Spalding,* 651 F.2d 643, 644 (9th Cir.) (per curiam), *cert. denied,* 452 U.S. 965, 101 S.Ct. 3119, 69 L.Ed.2d 978 (1981). Second, the district court found that Berry's delay in filing the instant petition did not prejudice the state in its ability to respond. 529 F.Supp. at 1074. Based on our review of the record of the state court proceedings as well as of that of the district court evidentiary hearing, we are unable to hold that the district court's finding of an absence of prejudice was clearly erroneous, even though we acknowledge that the state's inability to procure the testimony of Berry's trial counsel made the state's response more difficult. *Cf. Ford v. Superintendent, Kentucky State Penitentiary,* 687 F.2d 870 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1217, 75 L.Ed.2d 455 (1983); *Arnold v. Marshall,* 657 F.2d 83 (6th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). We do recognize, however, that this court has held that delay can "increase the petitioner's burden of proof in establishing a constitutional violation." *Davis v. Adult Parole Authority,* 610 F.2d 410, 415 (6th Cir.1979). *Accord Ford, supra,* 687 F.2d at 873. Finally, the language of Rule 9 is permissive rather than mandatory and leaves within the discretion of the court the decision of whether a delayed petition is to be dismissed. *Myers v. State of Washington,* 646 F.2d 355, 361 (9th Cir.1981). Particularly in light of the state's concession that the case can be reconstructed, we

do not hold that the district court abused its discretion in declining to dismiss Berry's petition under subsection (a) of Rule 9.

The state also argues that the district court should have dismissed Berry's petition under subsection (b) of Rule 9 because the issue presented in this appeal had been asserted in previous petitions filed by Berry and the determination of those petitions had been on the merits. We again decline to hold that the district court abused its discretion in declining to dismiss Berry's petition under subsection (b) of Rule 9 because, as the district court found, Berry had not been assisted by counsel in presenting this issue in his previously filed petitions. For the above reasons, we turn to the merits of Berry's petition.

### III. Voluntariness of the Plea

The principal claim Berry advances on appeal is that in light of his denial of an intent to kill he was denied due process by the trial court's failure to advise him of the nature of the offense to which he pleaded guilty and of the consequences of that plea. The issue of whether due process was denied is tantamount to the issue of whether Berry voluntarily and intelligently entered his plea of guilty. *See Armstrong v. Egeler,* 563 F.2d 796 (6th Cir.1977). This case does not raise a question of compliance with the rules regarding the acceptance of a guilty plea enunciated in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), because, as this court has repeatedly held, *Boykin* does not enjoy retroactive application. *E.g., Hendron v. Cowan,* 532 F.2d 1081 (6th Cir.1976) (per curiam); *Trombley v. Anderson,* 584 F.2d 807 (6th Cir.1978). The determination of whether Berry's guilty plea was voluntarily and intelligently made must be "based on a comprehensive examination of the totality of the circumstances", *Rinehart v. Brewer,* 561 F.2d 126, 130 (8th Cir.1977), rather than on any particular record inquiry. *See Armstrong, supra,* 563 F.2d at 799.

### A. Knowledge of the Substance of the Charge

Berry argues that his guilty plea to the open charge of murder was involuntary be-

cause he did not receive adequate notice of the nature of the charge to which he pleaded. The Supreme Court in *Marshall v. Lonberger,* —— U.S. ——, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), stated that a guilty plea will be involuntary where the defendant has "such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Id.* at 849 (quoting *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976)). *See also Smith v. O'Grady,* 312 U.S. 329, 332, 61 S.Ct. 572, 573, 85 L.Ed. 859 (1941).

Berry's argument that he did not understand the nature of the charge to which he pleaded guilty rests principally on the trial court's failure to list the elements of murder on the record, on Berry's assertion that he had been informed by his defense counsel prior to entering his plea that he would be convicted of manslaughter if he pleaded guilty, and on the repeated statements in the record by the trial judge, Berry's counsel, and the counsel of Berry's codefendant that following a plea of guilty to an open charge of murder the defendant could be convicted of manslaughter or of first or second degree murder. Based on a comprehensive review of the totality of circumstances of this case, we conclude that the district court's finding that Berry's plea was voluntary is not clearly erroneous.

■ First, the trial court's failure to list on the record the elements of murder under Michigan law or to state that intent is an element of murder does not compel a finding that Berry lacked knowledge of the true nature or substance of the charge to which he pleaded guilty. In *Henderson v. Morgan, supra,* the Supreme Court stated:

> Normally the record contains either an explanation of the charge by the trial judge, or · at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

426 U.S. at 647, 96 S.Ct. at 2258. Accordingly, under *Henderson,* a defendant should be presumed to have been informed adequately by his counsel of the charge to which he pleaded guilty even when the record is devoid of an explanation of the charge by the judge or of a representation by defense counsel that the nature of the charge has been explained to the defendant. *See Marshall v. Lonberger, supra,* 103 S.Ct. at 852–53. The presumption is particularly appropriate where, as here, trial counsel was an experienced criminal lawyer. *Id.* at 850 n. 3. In the instant case, however, the *Henderson* presumption need not be invoked. Berry, once in response to questions from the trial judge and twice in response to questions from his own counsel, stated on the record that he had discussed his plea with counsel. Additionally, Berry's defense counsel represented on the record that he had discussed with Berry the entry of a plea of guilty to the open charge of murder. Given the record representation by Berry's counsel, corroborated by Berry's own record admissions that he and his counsel had discussed the charge to which Berry pleaded guilty, any deficiency in the trial court's explanation of intent as an element of murder under Michigan law cannot now provide the basis for finding Berry's plea to have been involuntary.

■ Second, Berry's contention that his plea was involuntary because made in reliance on a purported statement by his counsel that he would be convicted of manslaughter is meritless. In response to questions Berry twice stated that he was entering his plea without any promise of favor or reward. Additionally, Berry's defense counsel argued in his closing argument that on the basis of the evidence presented, Berry should be convicted of second degree murder. This argument, · which evoked no reaction from Berry, is wholly inconsistent with Berry's assertion that he had been informed by his counsel that he would be convicted of manslaughter. *See Brown v. Perini,* 718 F.2d 784, 787–88 (6th Cir.1983).

Finally, the representations by the trial judge, Berry's counsel, and the counsel for Berry's codefendant that on a plea of guilty to an open charge of murder Berry could be convicted of manslaughter or of first or second degree murder do not require a finding that Berry's plea was involuntary, even though the representations were inaccurate as a statement of Michigan law. *See, e.g., Middleton, supra,* 22 Mich. App. at 696–97, 177 N.W.2d at 653 ("the only question to be resolved upon a plea of guilty to an open charge of murder is whether the accused's guilt is of the first or second degree."). As an initial point, under Michigan law, if the evidence adduced at the record hearing had indicated to the trial judge that Berry was guilty only of manslaughter, the trial judge would be under a duty to accept a plea of guilty to manslaughter rather than to murder. *Id.* at 697, 177 N.W.2d at 653. Berry thereby was guaranteed the possibility of a manslaughter conviction if the evidence had indicated that Berry had lacked the requisite intent for murder.[4] More significantly, the representations by the trial judge, Berry's counsel, and the counsel for Berry's codefendant do not mandate a finding that Berry lacked an understanding that intent is an element of murder under Michigan law.[5] Berry's testimony, as well as the arguments of Berry's counsel, were almost wholly directed toward demonstrating that the killing was accidental rather than intentional and evidenced an understanding on Berry's part that intent is an element of murder. An additional factor that the Supreme Court in *Lonberger, supra,* 103 S.Ct. at 852, held to be relevant to the voluntariness of a guilty plea is the accused's "experience in the criminal justice system", which in Berry's case was quite extensive and included at least three convictions prior to the incident from which this case arises. The totality of the circumstances clearly indicates that the district court did not err in finding Berry to have had an understanding of the charge to which he pleaded sufficient for the plea to be voluntary.

### B. Absence of an Explicit Admission of an Intent to Kill

Berry argues that his plea of guilty to the open charge of murder was involuntary because he had consistently maintained that he accidentally killed the victim. Berry relies on language in *Henderson, supra,* to the effect that the accused's failure to admit intent precluded a guilty plea to second degree murder from being voluntary. 426 U.S. at 645–46, 96 S.Ct. at 2257–2258. Berry's reliance is misplaced.

In *Henderson,* the accused, who had been indicted for first degree murder, pleaded guilty to second degree murder even though the accused never admitted having the requisite intent and, as the trial court found, the accused had not been informed that intent was an element of the crime. The Supreme Court found that nothing in the record could "serve as a substitute for either a finding after trial, or a voluntary admission, that [the accused] had the requisite intent." *Id.* at 646, 96 S.Ct. at 2258. Because a finding that the accused had the requisite intent neither was made nor was necessarily required by the statements or admissions of the accused and because the accused had not admitted having the requisite intent, the Court held that the guilty plea was involuntary.

The hybrid nature of a plea of guilty to an open charge of murder under Michigan law distinguishes the instant case from *Henderson.* Such a plea, by requiring the trial judge to hold a record hearing and to make findings of fact, guarantees that

---

4. We concur in the district court's determination that under the standard enunciated in *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–2792, 61 L.Ed.2d 560 (1979), the evidence was sufficient to support a conviction for first degree murder. 529 F.Supp. at 1076 n. 14.

5. Although murder involves intent, *People v. Chism,* 390 Mich. 104, 118, 211 N.W.2d 193, 199 (1973), it is not a specific intent crime, one of the elements of which is the formulation of a specific intent to kill. *People v. Garcia,* 51 Mich.App. 109, 112, 214 N.W.2d 544, 546 (1974), *aff'd,* 398 Mich. 250, 247 N.W.2d 547 (1976).

there will be either a voluntary admission of or a factual finding of each element of the offense for which the defendant is convicted. In the instant case, even though Berry denied that he intended to kill his victim, the trial judge at the conclusion of the record hearing made a finding of fact that Berry had not only the requisite intent but also the requisite premeditation to support a conviction for first degree murder. Accordingly, Berry's conviction for first degree murder did not deprive him of due process because his plea to an open charge of murder was not involuntary.

### C. Knowledge of Consequences of the Plea

■ Berry finally argues that his guilty plea was involuntary because made without knowledge of two consequences of the plea: what rights were waived by the plea and what sentence might be imposed as a result of the plea. The law is well-settled that a guilty plea is not voluntary if the defendant is unaware of its direct consequences. *Armstrong, supra,* 563 F.2d at 800; *Brown, supra,* 718 F.2d at 788. Based on our review of the totality of the circumstances of this case, we conclude that Berry's plea was not involuntary because made without knowledge of the consequences of the plea.

■ Although the trial court did not recite on the record a litany of Berry's rights prior to Berry's entering his plea of guilty to the open charge of murder, there can be little question that Berry was aware of his rights. Prior to waiving his right to a jury trial and entering his guilty plea, Berry twice on the record stated that he had discussed his constitutional rights with his court-appointed counsel. Berry's counsel also represented to the court that he had discussed the waiver of the right to a jury trial and the entry of the guilty plea with Berry prior to the entry of the plea. Finally, Berry testified on two occasions during direct examination that he had discussed the plea with his counsel. Considered as a whole, the record indicates that Berry was informed of the rights he waived by pleading guilty.

The record does not indicate, however, that Berry was informed that the punishment for first degree murder, which was the maximum punishment Berry could receive under his plea, was life imprisonment without eligibility of parole.[6] Nevertheless, based on the circumstances of this case, we concur in the district court's conclusion that Berry must be assumed to have been informed by his counsel of the possibility of a sentence of life imprisonment. 529 F.Supp. at 1079. Berry has conceded in several post-conviction pleadings that during pretrial strategy discussions his counsel informed him that by pleading guilty to an open charge of murder he would be convicted only of manslaughter or second degree murder and would "not get life." While not rising to the level of a finding by the trier of fact, these concessions support the district court's inference that Berry was informed that the maximum sentence for first degree murder was life imprisonment. The inference is particularly warranted where, as here, there are record representations that client and counsel discussed the advisability of the plea that was entered, counsel was an experienced criminal attorney, and the client had considerable experience in the criminal justice system. In such circumstances, it taxes credibility to suggest that the paramount question of sentence, from the point of view of the accused, would have remained unexplored in the attorney/client conferences. For this reason, our holding herein should not be regarded as an extension of the *Henderson* presumption. In the present case it is further to be noted that the inference is buttressed by the fact that the client made no objection at the time the sentence was imposed. Based on our review of the totality of the circumstances of this case, we conclude that Berry was sufficiently informed

---

6. Eligibility for parole has been determined by this court not to be a direct consequence of a guilty plea, *Brown, supra,* 718 F.2d at 788–89, but there is little question that imposition of the maximum sentence is a direct consequence. *Armstrong, supra,* 563 F.2d at 800.

of the consequences of his guilty plea so that the plea was voluntary.

## IV. Conclusion

In light of the foregoing, we conclude that the district court properly determined that Berry's plea of guilty was voluntary under the applicable constitutional principles. Consequently, the judgment of the district court denying Berry's petition for a writ of habeas corpus is affirmed.