*1063
 
 OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS
 

 COHN, District Judge.
 

 I.
 

 Before me is a petition for a writ of habeas corpus, 28 U.S.C. § 2254. Petitioner Thomas Berry, Jr. was convicted of first degree murder in the Recorder’s Court for the City of Detroit on May 18, 1964 and sentenced to a term of life imprisonment. He has been in the custody of the Michigan Department of Corrections since that time.
 

 A.
 

 Petitioner was arrested and arraigned on a criminal warrant charging first degree murder on October 25, 1963. Three days later counsel was appointed for him. He was arraigned on an-information charging first degree murder on December 11, 1963. On May 18, 1964 petitioner and his counsel appeared for trial. Petitioner indicated through his counsel and in a colloquy with the trial judge that he desired to plead guilty to an “open” charge of murder. Pursuant to M.C.L.A. § 750.318, a person charged with murder who desires to plead guilty may plead to an “open” charge of murder, waive his right to a jury trial and have the trial judge conduct an evidentiary hearing to determine whether the conviction will be murder in the first or second degree.
 
 [1]
 

 Petitioner then executed a written waiver of his right to a jury trial and with counsel present tendered a plea of guilty to an open murder charge. The trial judge then conducted an evidentiary hearing during which petitioner, his co-defendant and several witnesses testified. At the conclusion of testimony and argument of counsel, the trial judge found petitioner guilty of first degree (premeditated) murder. He was sentenced to life imprisonment on July 2, 1964; under Michigan law life imprisonment without parole is mandatory for first degree murder. M.C.L.A. §§ 750.316; 791.-234.
 

 B.
 

 The petition now before me alleges that petitioner:
 

 1) was denied due process of law because the information contained only an open charge of murder and did not specify degree.
 

 2) was denied due process and his right to trial by jury because the trial judge did not adhere to the requirements of M.C.L.A. § 768.35, governing acceptance of guilty pleas.
 

 3) was denied the right to confront his accusers because the trial judge considered the co-defendant’s allegedly improperly obtained confession in determining the degree of murder.
 

 4) was denied due process because the trial judge neither advised him of the nature of the charge against him nor of the consequences of his guilty plea.
 

 5) was denied his right to appeal and to effective assistance of appellate counsel.
 

 C.
 

 The petition was filed in
 
 pro per
 
 on June 2, 1980. An answer was filed by the Michigan Attorney General on October 31, 1980 asserting the petition was without merit. On March 5, 1981, I appointed counsel to represent petitioner. The following day I ordered a testimonial hearing with petitioner present and directed that the Prosecuting Attorney for Wayne County be invited to join in the defense. The Prosecuting
 

 
 *1064
 
 Attorney filed an appearance on March 13, 1981.
 

 A testimonial hearing was held on April 23, 1981 at which petitioner alone testified. Respondent’s counsel advised me at that time they had been unable to reach petitioner’s trial counsel, the assistant prosecutor or the trial judge at the May 18, 1964 proceeding. Various documents, including the transcript of the plea proceeding, were received in evidence.
 

 Post-hearing briefs were filed by both parties in September 1981 after which I heard argument. At my request respondent has filed an affidavit setting forth petitioner’s prior criminal record.
 

 II.
 

 A.
 

 Petitioner’s journey through Michigan’s criminal justice system and the federal courts has been long and tortuous. I relate the course of events in detail (as I have been able to determine it) because it reveals how many times petitioner has made many of the same arguments he now raises without receiving more than a cryptic response save in one instance.
 
 [2]
 

 October 25, 1963 Petitioner arrested and arraigned in Recorder’s Court on complaint and warrant for first degree murder and remanded to custody. Counsel appointed to represent petitioner on October 29.
 

 November 4, 1963 Petitioner bound over for trial on first degree murder charge after preliminary examination and remanded to custody.
 

 December 11, 1963 Petitioner arraigned on information charging first degree murder, entered plea of not guilty and remanded to custody.
 

 May 18, 1964
 
 [3]
 
 Petitioner appeared for trial and executed written waiver of jury trial and entered plea of guilty to open charge of murder. Trial judge took testimony from petitioner, co-defendant and other witnesses. Petitioner convicted of first degree premeditated murder.
 

 July 2, 1964 Petitioner sentenced to life imprisonment (He claims he wrote a letter to the sentencing judge asking how to appeal; letter is not in file before me.)
 

 July 12, 1964 Petitioner wrote letter to sentencing judge asking to appeal as an indigent person. Court forms for indigent appeal and appointment of appellate counsel mailed to petitioner by Recorder’s Court oh August 14. Forms returned completed by petitioner on November 4.
 

 November 10,1964 Appellate counsel appointed. Counsel ordered transcript on January 25, 1964.
 

 February 17, 1966 Transcript of plea filed in Recorder’s Court and sent to appellate counsel.
 

 June 17, 1966 Appellate counsel filed motion for leave to file motion to vacate judgment of conviction in Recorder’s Court alleging failure to comply with M.C.L.A. § 768.35, governing acceptance of guilty pleas in Michigan courts. Wayne County Prosecutor filed answer'to motion on July 16.
 

 December 8,1966 Petitioner’s motion denied in short order stating:
 

 “.. . the Court in reviewing the entire proceedings involved in accept
 
 *1065
 
 ing defendant’s plea finds that the record evidences that defendant did plead guilty voluntarily and understandably. Defendant testified in Court that he knew the Court could find him guilty of either first degree or second degree murder or manslaughter and that he understood what he was doing.”
 

 April 21, 1967 Appellate counsel filed application for delayed appeal in Michigan Court of Appeals in essence restating his motion to vacate denied in Recorder’s Court. Consideration deferred until transcript and file sent from Recorder’s Court on August 2.
 

 August 17, 1967 Application for delayed appeal denied in an order stating in its entirety:
 

 “In this cause an application for delayed appeal is filed by defendant and an answer in opposition thereto having been filed, and due consideration thereof having been had by the Court, IT IS ORDERED that the application for delayed appeal be, and the same is hereby DENIED, for lack of meritorious grounds for granting same.”
 

 September 23, 1968 Petitioner in
 
 pro
 
 per
 
 [4]
 
 requested certain portions of the plea transcript and sent check to cover costs. Not clear if sent to him.
 

 October 14, 1968 Petitioner filed motion in Recorder’s Court for entire transcript at public expense. After response filed on November 20 by Wayne County Prosecutor, motion denied on December 17. A letter to petitioner from Clerk of the Michigan Court of Appeals dated January 3, 1969 indicates petitioner filed a claim of appeal from the order denying the motion, but that the appeal was dismissed since the order was not a final judgment.
 

 August 28, 1969 Petitioner filed complaint for writ of habeas corpus in Michigan Court of Appeals, claiming ineffective assistance of counsel and deprivation of his right to appeal. Court of Appeals returned complaint advising petitioner to refile in the Michigan Supreme Court. Petitioner refiled in the Michigan Court of Appeals and was informed on September 17, 1969 that his complaint would be treated as an application for delayed appeal. ' Complete transcript received by Michigan Court of Appeals from Recorder’s Court on January 5, 1970.
 

 March 15, 1970 Petitioner filed complaint for superintending control in Michigan Supreme Court seeking an order compelling the Michigan Court of Appeals to treat his complaint for habeas as such rather than as an application for delayed appeal. The complaint was actually filed on February 25, 1970 but was returned to petitioner by the Michigan Supreme Court in the belief he was appealing denial of his habeas petition while it was still pending in the Michigan Court of Appeals. Petitioner then re-filed the complaint. Wayne County Prosecutor filed response on April 6.
 

 May 15, 1970 Michigan Supreme Court denied complaint for superintending control in short order citing M.C.L.A. § 600.4310, which makes persons convicted of a criminal offense ineligible for state habeas relief.
 

 May 26, 1970 Michigan Court of Appeals denied complaint for writ of habeas corpus, which was treated as an application for delayed appeal, with the following order:
 

 “IT IS ORDERED that the application be and same is hereby DENIED for lack of merit in the grounds presented.”
 

 June 1, 1970 Petitioner filed an application for a “Walker” hearing
 
 (People v. Walker,
 
 374 Mich. 331, 132 N.W.2d 87 (1965)) (hearing to determine voluntariness of confession) in Recorder’s Court. Denied as moot in letter dated June 12.
 

 
 *1066
 
 July 14, 1970 Petitioner filed a petition for writ of habeas corpus in this district, which was assigned to then District Judge Damon J. Keith. Petition listed nine assignments of error, including those previously raised in state courts.
 

 September 10, 1970 Judge Keith denied the petition for failure to exhaust state remedies, 28 U.S.C. § 2254(b), since petitioner had never applied to the Michigan Supreme Court for leave to appeal from the denial of his applications for delayed appeal by the Michigan Court of Appeals on August 17, 1967 and May 26, 1970. Petitioner moved for rehearing on September 22; rehearing was denied on December 24.
 

 January 25, 1971 Petitioner filed an application for leave to file a delayed appeal in the Michigan Supreme Court, alleging virtually the same errors as in his July 1970 federal habeas petition. The entire record of petitioner’s case was received by the Michigan Supreme Court from Recorder’s Court in February 1971.
 

 March 25, 1971 Michigan Supreme Court denied petitioner’s application with the following order:
 

 “On order of the Court, the delayed application in pro per by defendant and appellant is considered, and the same is hereby DENIED, for the reason that no sufficient justification appears therefor.”
 

 April 21, 1971 Petitioner filed a second habeas petition in this district, also assigned to Judge Keith, assigning twelve errors similar to those advanced earlier. The complete transcript from Recorder’s Court was filed before Judge Keith.
 

 June 29, 1971 Judge Keith denied the habeas petition noting the following:
 

 “.. . the primary issue is whether there was a voluntary plea of guilty with a full understanding of rights and possible consequences. A reading of the trial transcript clearly establishes that the trial judge did a very thorough job in determining that petitioner’s plea was voluntary. The record indicates that petitioner was extensively interrogated on the question of the voluntariness of his plea, that he understood the nature of the charges against him, that no promises were made to him and that he understood the penalty he could receive. When the trial [judge] has so questioned the accused about pleading guilty, the petition cannot now be heard to collaterally attack the record and deny what was said in open court ....
 

 Furthermore, it has been recognized that one factor which strongly militates against the conclusion that a plea was involuntary is the fact that petitioner was represented by counsel.” (citations omitted).
 

 Petitioner requested a certificate of probable cause to appeal to the Court of Appeals for the Sixth Circuit, which was denied by Judge Keith on December 17.
 

 February 14, 1974 Petitioner filed an application for leave to file a delayed motion for new trial in Recorder’s Court. The application was denied on February 26 in a short order which quoted the Michigan Supreme Court’s order of March 25, 1971 that “no sufficient justification appears therefor”.
 

 July 25, 1974 Petitioner filed a third habeas petition in federal court, this time in the Western District of Michigan because he was a resident at the Michigan Branch Prison in Marquette, Michigan. He alleged only ineffective assistance of counsel regarding appeal. Judge Noel Fox denied the petition on January 16, 1976 after a review of the full record which had been filed with him. A request for a certificate of probable cause to appeal to the Sixth Circuit Court of Appeals was denied on February 13.
 

 June 18, 1979 Petitioner again filed a request for all court records and transcripts at public expense in Recorder’s
 
 *1067
 
 Court. On July 20, 1979 petitioner was finally sent (apparently for the first time) the Recorder’s Court file and transcript of his case. (See discussion in Part III(B),
 
 infra.)
 

 June 2, 1980 Petitioner filed the petition for habeas corpus now before me, his fourth federal habeas petition.
 

 B.
 

 The main focus of petitioner’s argument is on the events of May 18, 1964 when he and his trial counsel appeared for trial in Recorder’s Court. Counsel began the proceeding by indicating that petitioner elected to waive his right to a jury trial and after discussion with counsel desired to enter a guilty plea to the open charge of murder with the trial judge to take testimony on the degree of murder. The trial judge then discussed the matter with petitioner, who stated he had discussed the jury trial waiver with counsel, was signing the written jury trial waiver freely and voluntarily and had been made no promises in return for his plea.
 
 [5]
 

 After engaging in a similar colloquy with co-defendant Hardy, who entered the same plea, the trial judge heard testimony from various police officers who attended the scene of the killing or took statements from either defendant, the deceased’s brother and both petitioner and co-defendant Hardy.
 
 [6]
 
 At the beginning of his testimony petitioner stated he had discussed his guilty plea with counsel, was entering his plea with full knowledge and consent and recognized the trial judge could find him guilty of first or second degree murder or manslaughter. At a later point in his testimony petitioner reaffirmed that he had discussed the plea with counsel and had been promised nothing in return for his plea.
 
 [7]
 

 Most of the evidence before the trial judge consisted of the testimony of petitioner and co-defendant Hardy and their post-arrest statements introduced through the police officer witnesses. The evidence clearly established, and the trial judge found, that petitioner and Hardy entered a flower shop owned by the deceased on September 5, 1963 intending to rob the shop. Petitioner grabbed the shopkeeper from behind and held a knife to his neck. A scuffle ensued during which the shopkeeper lunged forward (perhaps to try to reach a gun he kept covered under the counter) and was fatally wounded in the neck by petitioner’s knife. The substance of petitioner’s testimony was that he simply tried to block the shopkeeper’s lunge and the victim impaled himself on the knife. He claimed the killing was accidental and he had no intention of killing the shopkeeper.
 

 The trial judge found petitioner guilty of first degree premeditated murder and found co-defendant Hardy guilty of second degree murder.
 
 [8]
 
 The trial judge concluded petitioner was guilty of premeditation because petitioner was prepared to do whatever was necessary to accomplish the robbery. He based this finding on the fact that petitioner had purchased the knife earlier that day, on Hardy’s statement and testimony
 
 *1068
 
 that petitioner asked him before entering the flower shop how far he was prepared to go and on petitioner’s testimony that he knew they could be shot during the robbery.
 
 [9]
 

 At the testimonial hearing in April 1981, petitioner testified that he discussed the open murder plea with his counsel twice, that he thought he was going to be convicted of manslaughter and was so told by his counsel, and that he did not know what first degree murder was nor did he know the difference between first and second degree murder. Petitioner also acknowledged that despite his claim that he was unaware he could receive a life sentence for first degree murder, he said nothing to the sentencing judge when a life sentence was pronounced on July 2, 1964.
 

 III.
 

 Respondent says that I should not consider the merits of petitioner’s claims because of the prejudice to the state resulting from the unusually long lapse of time since petitioner’s conviction, Rule 9(a), or because petitioner’s prior habeas petitions in federal court raised the same issues he now raises and were decided on the merits adversely to him, Rule 9(b).
 
 [10]
 

 A.
 

 Rule 9(a) provides for discretionary dismissal of a federal habeas petition “if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing . . . . ” Rule 9(a) is not a statute of limitations; it is based on the equitable doctrine of laches.
 
 Fay v. Noia,
 
 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963).
 

 Respondent has not demonstrated any prejudice in its ability to respond to the petition due to delay in its filing. The Wayne County Prosecutor, who has appeared for respondent, has adequately met the issues raised by petitioner and responded to my requests and inquiries. The Attorney General has also apparently responded adequately to petitioner’s prior habeas petitions and many of his state court filings.
 

 The literal language of Rule 9(a) does not refer to prejudice to the state were it forced to attempt to retry petitioner if I were to sustain this collateral attack on his conviction. Even presuming that type of prejudice were a proper Rule 9(a) inquiry, a Detroit police officer who has reviewed petitioner’s file regarding retrial concludes, in an affidavit filed with me by respondent, that “in the absence of waivers of the presence of police personnel and with a great deal of effort the case can be reconstructed.”
 

 B.
 

 Rule 9(b) provides that “A second or successive petition may be dismissed if the judge finds that it fails to allege new and different grounds for relief and the prior determination was on the merits . . . . ” Respondent argues that each ground for relief asserted by petitioner in this petition has been asserted and determined against him on the merits in his second habeas petition before Judge Keith in 1971 and his third habeas petition before Judge Fox in 1974. Petitioner responds that I should not invoke Rule 9(b) because petitioner did not have the benefit of a transcript, of the Recorder’s Court proceedings in his possession when he filed the earlier petitions.
 

 I will not apply Rule 9(b) in a blanket fashion.
 

 Petitioner’s argument that Rule 9(b) should not apply because he did not have a Recorder’s Court transcript until 1979 is not convincing, since Judges Keith and Fox each had a transcript. Petitioner’s arguments were clearly made in the prior petitions and the transcript is short enough that a federal judge could review it and distill
 
 *1069
 
 the relevant portions on his own to evaluate the arguments raised. The difference in this case, however, is the conjunction of the transcript and the fact that petitioner now has counsel representing him. This combination of events, which has not occurred since August 1967, convinces me to decline to invoke Rule 9(b) as to those grounds raised by petitioner that involve the events surrounding his plea on May 18, 1964, being grounds (l)-(4) as listed in Part 1(B),
 
 supra.
 

 Petitioner’s ground (5), denial of his right to appeal in the Michigan courts and to effective assistance of appellate counsel, will be dismissed under Rule 9(b). This claim was raised and determined adversely to petitioner on the merits by Judge Keith in 1971, in an opinion denying a certificate of probable cause, and by Judge Fox in 1976, where this ground was a main issue argued by petitioner. Effective assistance of appellate counsel is not an argument which would have been aided had petitioner possessed a copy of the Recorder’s Court transcript, and his current counsel does not make this argument in the brief in support of the instant petition. Nor is there a claim that evidence now available to petitioner was not available before. Accordingly, petitioner’s ground (5) is dismissed under Rule 9(b).
 

 IV.
 

 A.
 

 Grounds (1) and (2) asserted by petitioner involve questions of purely state law. In ground (1) petitioner claims he was denied due process because the information failed to specify what degree of murder he was charged with. In ground (2) petitioner claims he was denied due process and his right to a jury trial because the trial judge failed to adhere to M.C.L.A. § 768.35, which sets forth requirements for acceptance of guilty pleas in Michigan. Since both arguments challenge conduct by the trial judge in failing to comply with requirements of Michigan law, they are not cognizable on federal habeas, 28 U.S.C. § 2254(a).
 
 [11]
 

 Petitioner asserts in ground (3) that he was denied his Sixth Amendment right of confrontation because the trial judge based his finding of premeditation in part on the testimony of co-defendant Hardy and Hardy’s post-arrest statements admitted in evidence at the “mini-trial” following his guilty plea to open murder.
 
 [12]
 

 It is not clear whether petitioner is arguing that Hardy’s post-arrest statements were unlawfully obtained and thus should not have been admitted in evidence or that the trial judge based his finding of premeditation on Hardy’s testimony, which petitioner claims was inconsistent with his prior statements and perjurous. In either event the argument fails.
 

 B.
 

 Petitioner has no standing to contest the admission of post-arrest statements made by a co-defendant on the grounds that they were unlawfully obtained. The privilege against self-incrimination of the Fifth and Fourteenth Amendments is personal in nature and may not be asserted by a third party.
 
 Bellis v. United States,
 
 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Of course if the defendant making the statement incriminates another defendant, as Hardy’s statements may have incriminat
 
 *1070
 
 ed petitioner here, the Sixth Amendment right of confrontation may be violated if the defendant making the statement does not testify at trial.
 
 Bruton v. United States,
 
 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In this case, however, co-defendant Hardy did testify at the mini-trial conducted after the guilty pleas were entered to determine the degree of murder and in fact was cross-examined by petitioner’s counsel. Thus there was no violation of petitioner’s Sixth Amendment right of confrontation.
 
 California v. Green,
 
 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).
 
 [13]
 

 Since Hardy testified at trial and was cross-examined by both the prosecutor and petitioner’s counsel, the trial judge could properly base a finding of premeditation on Hardy’s testimony. Whether his testimony was inconsistent with his prior statements or was perjurous, as petitioner claims, was a matter of credibility and sufficiency of evidence. Credibility alone does not raise a constitutional issue. Whether the trial judge’s factual finding of premeditation was based on constitutionally sufficient evidence does raise an issue cognizable on federal habeas,
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), but petitioner does not raise this ground in his petition nor does his counsel argue it in the brief in support.
 
 [14]
 
 Since the evidence relied upon by the trial judge in making his factual finding of premeditation was competent (i.e., admissible), ground (3) provides no basis for habeas relief.
 

 C.
 

 In ground (4) petitioner claims his guilty plea to open murder was constitutionally defective because he was not advised of the nature of the charge against him nor of the consequences of his guilty plea. Petitioner has made this argument in every substantive brief filed by him or his counsel since 1966 when he began attacking his conviction.
 
 [15]
 
 It has never been answered in a written opinion by a Michigan court, save the phrases “he understood what he was doing” and “it lacks meritorious grounds”.
 

 The issue presented by petitioner’s claim is whether his plea was voluntary and intelligently made within the meaning of
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Although
 
 Boy-
 
 
 *1071
 

 kin
 
 established prophylactic rules requiring that an accused be informed on the record of his right to confront witnesses and the privileges against self-incrimination before he pleads guilty, something obviously not done here, the
 
 Boykin
 
 rules only apply to guilty pleas entered after June 2, 1969.
 
 Winegar v. Corrections Department,
 
 435 F.Supp. 285 (W.D.Mich.1977),
 
 aff’d.,
 
 582 F.2d 1281 (6th Cir. 1978). Since petitioner’s plea was entered in May 1964, “the voluntariness of the plea must be determined by a comprehensive examination of the totality of the circumstances”.
 
 Rinehart v. Brewer,
 
 561 F.2d 126, 130 (8th Cir. 1977). A guilty plea does not require any precise litany for its accomplishment.
 
 Armstrong v. Egeler,
 
 563 F.2d 796, 799 (6th Cir. 1977).
 

 1.
 

 The first and most universally recognized requirement of due process in the context of a guilty plea, and which is necessary for a guilty plea to be considered voluntary and intelligently made, is that the accused receive “real notice of the true nature of the charge against him.”
 
 Smith v. O’Grady,
 
 312 U.S. 329, 332, 61 S.Ct. 572, 573, 85 L.Ed. 859 (1941). Petitioner argues he was never informed of the nature of the charges of first or second degree murder and the difference between them, he never factually admitted the elements of first degree murder, and was misinformed by counsel as to the nature of the open charge proceeding and so believed he could be convicted of manslaughter.
 

 Petitioner’s argument, though facially supported by the record, is not convincing. It is true that at no point in the record did the trial judge inform petitioner of the precise elements of first and second degree murder or the difference between them. However, petitioner acknowledged in his testimony on May 18, 1964 and at the testimonial hearing before me that he discussed the guilty plea to an open murder charge with his trial counsel at least twice before its entry, and that the plea was made with his “full knowledge and consent” (Tr. 75). As the Supreme Court noted in
 
 Henderson v. Morgan,
 
 426 U.S. 637, 647-48, 96 S.Ct. 2253, 2258-59, 49 L.Ed.2d 108 (1976):
 

 “Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.”
 

 Though petitioner was represented by an attorney who had never entered a plea on behalf of an accused to an open murder charge, trial counsel was an experienced criminal lawyer. I do not find it unreasonable to assume he explained the nature of the charge in sufficient detail to give petitioner notice of what he was asked to admit.
 

 Moreover, petitioner acknowledged in his testimony that he was aware he could be convicted of first or second degree murder (Tr. 75). It is only reasonable to assume he understood there was a difference between them. Whether he understood the precise difference between, first and second degree murder is of little moment since petitioner did not plead guilty to murder in a specific degree. He pleaded guilty to an open charge of murder, meaning it was sufficient if petitioner understood the elements of murder (as opposed to manslaughter), which in Michigan are equivalent to the elements of second degree murder:
 

 “In general terms second-degree murder is an unlawful killing and a purpose to kill without that deliberation and premeditation which distinguishes it from murder in the first degree, but without such provocation and stirring of the blood which precludes the exercise of reason as would in a legal sense exclude the idea of malice aforethought and thereby reduce the homicide to manslaughter.”
 

 People v. Bryant,
 
 43 Mich.App. 659, 663-64, 204 N.W.2d 746 (1972).
 

 
 *1072
 
 Thus the fact that petitioner was not specifically advised on the record of the elements of first and second degree murder and the difference between them makes his plea neither involuntary nor unintelligently made. Nor does the fact that petitioner never factually admitted the crucial element of first degree murder, that is, premeditation. He pleaded guilty to murder; premeditation was a factual finding by the trial judge from all the evidence presented following the guilty plea.
 
 [16]
 

 Petitioner also argues he never factually admitted an intent to kill the shopkeeper, a necessary element of the offense of murder to which he pleaded guilty. He also argues he believed he could be convicted of manslaughter rather than any degree of murder by entering a guilty plea to an open murder charge. In fact petitioner testified and has maintained since 1964 that the killing of the shopkeeper was the accidental result of his attempt to stop the victim’s lunge for an apparent weapon under the counter in his store, and that he had no intent to kill the deceased (Tr. 77-78, 88). Petitioner could not have been convicted of manslaughter pursuant to the guilty plea since “the only question to be resolved upon a plea of guilty to an open charge of murder is whether the accused’s guilt is of the first or second degree”.
 
 People v. Middleton,
 
 22 Mich.App. 694, 696-97, 177 N.W.2d 652 (1970).
 

 Nonetheless, neither factor makes his plea constitutionally infirm. First, petitioner’s testimony denying an intent to kill the shopkeeper evidences an awareness that intent was a necessary element of murder. Second, if the trial judge had concluded that the evidence indicated petitioner had no intent to kill the victim, thus making him guilty at most of manslaughter, he would have been required to reject the guilty plea to the open charge of murder and allow petitioner to plead guilty to manslaughter.
 
 People v. Middleton, supra,
 
 22 Mich, at 697, 177 N.W.2d 652. Thus petitioner’s erroneous belief that he could be convicted of manslaughter as a result of his guilty plea and his refusal to admit to intentionally killing the shopkeeper are irrelevant so long as the trial judge’s implicit factual conclusion that petitioner possessed an intent to kill survives constitutional scrutiny, which I have already indicated it does.
 
 [17]
 
 Petitioner was also protected from the lost possibility of a manslaughter conviction on the guilty plea and a murder conviction over his denial of intent to kill via the trial judge’s duty under Michigan law to reject his guilty plea if not supported by the facts.
 
 [18]
 

 Two other factors convince me petitioner’s plea was voluntarily and intelligently made. First, petitioner was no stranger to the criminal justice system. In his testimony following the guilty plea he acknowledged several prior convictions (Tr. 86-87). His criminal record indicates prior convictions for unlawful driving away of an auto in 1951, assault to rob armed in 1955 and escape from prison in 1957. He was paroled by the Michigan Department of Corrections two weeks before the robbery incident here involved. I believe petitioner’s prior criminal record is relevant, not to show he is a “bad” person deserving incarceration, but to demonstrate an awareness of the criminal justice system and its proceedings.
 

 Thus plaintiff’s heavy reliance on
 
 Rinehart v. Brewer,
 
 421 F.Supp. 508 (S.D.Iowa
 
 *1073
 
 1976),
 
 aff’d.,
 
 561 F.2d 126 (8th Cir. 1977), is misplaced. In that case, which involved a collateral attack on a first degree murder conviction following a guilty plea to an open murder charge similar to the proceeding here, the court of appeals affirmed a granting of habeas relief on the basis that the petitioner’s plea was not entered voluntarily and intelligently. Both the district court and the court of appeals placed emphasis on the fact that the petitioner was only 15 years old, had no prior experience with the legal system and no other basis for understanding what was happening to him. There was also evidence that the petitioner had undergone psychiatric evaluation before his plea to determine whether he was “psychiatrically ill”. 561 F.2d at 130; 421 F.Supp. at 512. Petitioner in this case is in a markedly different situation in determining whether he voluntarily and intelligently pleaded guilty.
 
 [19]
 

 Second, those portions of petitioner’s testimony following his plea which concern his awareness of the proceedings
 
 [20]
 
 are not a mere litany of rehearsed answers to expected questions. Phrases such as “Yes we had”, “Yes it was”, “That’s correct” and “I’m aware of this” (Tr. 75) indicate a conscious and voluntary decision to enter a guilty plea to an open murder charge and to “take his chances” with the trial judge regarding the degree of murder.
 

 2.
 

 A guilty plea may not be considered voluntary and intelligently made unless the accused is aware of the consequences of his plea, that is, the sentence which may be imposed.
 
 Armstrong v. Egeler,
 
 389 F.Supp. 483 (E.D.Mich.1975),
 
 aff’d.;
 
 563 F.2d 796 (6th Cir. 1977).
 

 Petitioner does not allege specifically in his petition nor in the brief in support that he was unaware that the mandatory punishment for first degree murder in Michigan is life imprisonment. However, he has alluded to that claim on at least six occasions beginning with his delayed motion to vacate the judgment of conviction filed in Recorder’s Court by his appellate counsel in June 1966.
 

 The punishment for first degree murder is set forth in the statute, M.C.L.A. § 750.-316.
 
 [21]
 
 Although the trial judge read a portion of the statute at the time he found petitioner guilty of first degree murder, he did not read the punishment (Tr. 155),
 
 [22]
 
 and respondent acknowledged at oral argument that petitioner was never advised of punishment on the record.
 

 Nonetheless, I conclude that in light of all of the circumstances of this case, petitioner’s plea was voluntary and intelligently made. The Supreme Court’s earlier-noted observation in
 
 Henderson v. Morgan, supra,
 
 426 U.S. at 647, 96 S.Ct. at 2258, that it is appropriate in most cases to presume counsel has advised his client of the nature of the offense charged, is equally applicable to advising about possible punishment.
 

 Moreover, in at least three briefs in support of attacks on his conviction petitioner has alleged he was informed by counsel that by pleading guilty to open murder and testifying he would be convicted of second degree murder or manslaughter and would “not get life”.
 
 [23]
 
 Certainly in his discussions
 
 *1074
 
 with trial counsel, which petitioner acknowledges took place, a discussion of strategy included attempting to secure a conviction of second degree murder or manslaughter rather than first degree murder. It is reasonable to assume petitioner was informed (if it cannot be gleaned from his post-conviction pleadings themselves) that the reason for attempting to avoid a first degree murder conviction was because that offense carried a life sentence. If petitioner was in fact told that by pleading guilty to open murder and testifying he would not receive a life sentence, his trial counsel, while erring in his prediction of the trial judge’s actions; informed petitioner of the possibility of a life sentence.
 
 [24]
 

 In light of all of the circumstances, I do not find a constitutional defect in the fact that petitioner was not informed on the record that a conviction of first degree murder carried a mandatory life sentence. The plea was entered voluntarily and intelligently within the meaning of
 
 Boykin v. Alabama, supra,
 
 and thus the petition for a writ of habeas corpus will be denied.
 
 [25]
 

 V.
 

 In denying petitioner’s request for a writ of habeas corpus, I am constrained to say something more. Petitioner has been in custody for a first degree murder conviction for over seventeen years. During that time he has' presented, either in
 
 pro per
 
 or with the -assistance of counsel, twelve requests for relief — three in the Recorder’s Court for the City of Detroit, three in the Michigan Court of Appeals, two in the Michigan Supreme, Court and four federal habeas petitions in United States District Courts. He requested a copy of his file and plea transcript on at least three documented occasions before there is direct evidence of his receiving it in July 1979.
 

 The tragedy here is not that petitioner filed eight requests for relief in Michigan courts (there are probably inmates in the Michigan corrections system who have filed far more) but that no state court has ever either seen fit or taken the time, or both, to explain in writing why the conviction is valid. Despite eight opportunities to explain, even briefly, each time a Michigan court denied petitioner’s motion or petition or application with a curt single-paragraph order which at most told him “he knew what he was doing” or that his request “lacked meritorious grounds”. I have no doubt that far more work was done by the state courts in reviewing petitioner’s filings than is reflected in the orders entered; but the fact remains that a court can explain its actions only through a written opinion. In sum, no state court has ever explained clearly to petitioner why his arguments against his lifetime incarceration lack any merit.
 

 The scope of federal habeas, traditionally known as the “Great Writ”, as a means of relief from unconstitutional state court convictions is in question. Robert J. Sheran, Chief Justice of the Supreme Court of Minnesota, recently wrote:
 

 “The initial reaction of state judges to the 1960-1970 extensions of the authority of federal courts was hostile and defensive. Many of the chief justices of the
 
 *1075
 
 several states looked upon these decisions of the United States Supreme Court as an affront to be opposed as a matter of survival. By contrast, there is today substantial agreement among the state judges of this country . . . that the decisions of the United States Supreme Court affecting the trial of criminal cases in state courts are sound in principle and should be adhered to in letter and in spirit in the trial of all criminal cases.
 
 However, the view that challenged state criminal convictions which have been approved by the final court of appeals of a state should not, in effect, be reversed by a judge of the federal district court persists
 
 — most
 
 emphatically.”
 
 (emphasis supplied).
 

 State Courts and Federalism in the 1980’s: Comment, 22
 
 William & Mary L.Rev.
 
 789, 791 (1981). Justice Rehnquist has said:
 

 “It is scarcely surprising that fewer and fewer capable lawyers can be found to serve on state benches when they may find their considered decisions overturned by the ruling of a single federal district judge on grounds as tenuous as these. This case represents, not merely one more piece of grist in a giant judicial mill, but a vivid illustration of the misapplication of the precedent of this Court by a single federal habeas court followed by a conclusion that the habeas court’s version of our case law required exclusion of evidence which the state court system had found to be harmless.”
 

 Snead
 
 v. Stringer,-U.S.--,-, 102 S.Ct. 535, 538, 70 L.Ed.2d 402 (1981) (dissenting from denial of a petition for writ of certiorari).
 

 Petitioner’s allegations, especially his claim that he was not informed of the nature of the charge against him nor of the consequences of his plea, were just not frivolous when first made in 1966 and are not frivolous now. I have not done more than was necessary under the circumstances of this case. If the state judges to whom petitioner’s “questions” were directed had answered them on their merits in a written opinion on any of the eight requested occasions, federal habeas review and this rather lengthy opinion would have been unnecessary.
 

 The petition for a writ of habeas corpus is DENIED.
 

 SO ORDERED.
 

 EXHIBIT A
 

 Detroit, Michigan
 

 Monday, May 18, 1964
 

 9:00 A.M. O’clock
 

 THE COURT: We have two matters for the Court at this time, criminal matters, The People of the State of Michigan versus Thomas Berry, Jr. and Warren Hardy. Counsel ready with those two matters?
 

 MR. SUMMER [Counsel for petitioner]: We’re ready.
 

 MR. HYLTON [Counsel for Hardy]: We’re ready.
 

 THE COURT: Has there been a waiver in this case signed by counsel for the defendants?
 

 MR. SUMMER: I’m waiting for my client to be brought in, sir, to sign it.
 

 If the Court please, let the record show that I am causing to be filed with the Clerk of your court a written signed waiver of trial by jury signed by the defendant Thomas Berry, Junior. I've advised Mr. Berry as to his right to trial by jury and he’s elected to waive that right. I might say further, if the Court please, that in addition to waiving his right to a trial by-jury the defendant has suggested to me after I’ve discussed it with him that he desires to enter a plea of guilty to the open charge of murder and what I have in mind is, if the Court please, is that the Court would take testimony and make a determination himself as to the degree of this.
 

 MR. HYLTON: May it please the Court, for the record I pass to the Court a waiver of a trial by jury duly signed by the defendant Warren Hardy. In that connection I’ve discussed with my client his rights to a trial by jury and he’s elected to waive.
 

 THE COURT: Very well, the record will so show.
 

 
 *1076
 
 I want to ask Thomas Berry, Junior, the defendant, will just stand, please — Mr. Berry, you stand here before this court charged with murder in the first-degree on the information that was filed in your case by the People. Now, I have before me a waiver of a trial by jury that was presented to you by your counsel and which has been signed by you, is that correct?
 

 DEFENDANT BERRY: Correct.
 

 THE COURT: And were your constitutional rights explained to you by counsel so that you understand what you’re doing?
 

 DEFENDANT BERRY: They were, your Honor.
 

 THE COURT: And you realize and understand your constitutional rights give you a trial, a right to a trial by jury and also to be represented by counsel and at this time you appear with your counsel, Mr. Summer. Have you had an opportunity to discuss this matter with him?
 

 DEFENDANT BERRY: I have, your Honor.
 

 THE COURT: And in signing this waiver of a trial by jury do you make that freely and voluntary?
 

 DEFENDANT BERRY: I do.
 

 THE COURT: Has anybody made you any promise of favor or reward for your plea at this time?
 

 DEFENDANT BERRY: No.
 

 THE COURT: Do you want the Court to understand you’re signing the waiver?
 

 DEFENDANT BERRY: Yes, sir.
 

 THE COURT: Very well, you may sit down.
 

 EXHIBIT B
 

 Detroit, Michigan
 

 Monday, May 18, 1964
 

 2:00 P.M. O’clock
 

 MR. SUMMER: Take the stand, please.
 

 THOMAS BERRY, JUNIOR, was called as a witness herein, sworn by the Court, was examined and testified as follows:
 

 DIRECT EXAMINATION
 

 BY MR. SUMMER:
 

 Q Now, your name is Thomas Berry, Junior?
 

 A Yes.
 

 Q Mr. Berry, where do you live?
 

 A 2014 Blaine.
 

 Q Can you sit over that way and face this way? And is that in the City of Detroit?
 

 A Yes, it is.
 

 Q Mr. Berry, did you hear the offer that I made at the outset of these proceedings to the Court, that is, that you offered to plead guilty to murder?
 

 A Yes, I did.
 

 Q And had you and I discussed it before I made that offer in your behalf?
 

 A Yes, we had.
 

 Q And was that offer made with your full knowledge and consent?
 

 A Yes, it was.
 

 Q And you have tendered to the Court here and you are tendering now a plea of guilty to the crime of murder?
 

 A Yes.
 

 Q Without a determination as to the degree of guilt?
 

 A That’s correct.
 

 Q And of course, you know it’s up to the Court and the Court can find you guilty of either murder in the first-degree, murder in the second-degree, or manslaughter with that sort of a plea?
 

 A I’m aware of this.
 

 Q Now, this Kourmadas that was killed, did you know him before he was killed?
 

 A No, I did not.
 

 Q Did you and the other defendant in this particular lawsuit participate together in a robbery of this flower shop?
 

 A Yes, we did.
 

 Q Had you discussed it before the robbery?
 

 A I don’t quite understand.
 

 Q Had you and he discussed it before you went into the place to hold the man up?
 

 A Yes, we had.
 

 
 *1077
 
 Q Now, prior to taking the stand just a few moments ago did you and I discuss your case several times?
 

 A Yes, we have.
 

 Q Now, I was appointed by the Court to represent you, isn’t that correct?
 

 A That’s right.
 

 Q I’ve discussed this case with you several times?
 

 A Right.
 

 Q And advised you?
 

 A Yes.
 

 Q And you advised with me before making this statement to go on the witness stand, have you not?
 

 A I did.
 

 Q And are you testifying as you are because what you say was the truth? A It is.
 

 Q Nobody’s threatened you or promised you anything to make this statement? A No, they are not.
 

 Q In other words, nobody’s hit you or said it’d be worse for you if you don’t plead guilty or worse for you if you don’t take the witness stand?
 

 A No, they haven’t.
 

 Q Nobody has told you that if you do take the witness stand you’ll get any particular benefit or gain by it?
 

 A No.
 

 Q You do understand by pleading guilty you might be found guilty of murder in the first-degree, or in the second-degree, or to manslaughter?
 

 A I do.
 

 EXHIBIT C
 

 THE COURT: In this case the joint Information was filed by the People of the State of Michigan against Thomas Berry, Junior and against Warren Hardy. The two defendants were accused of the crime of murder in the first-degree or the Information so-charges; and that the offense was supposed to have happened or alleged to have happened on September 5, 1963 at approximately — approximately 3:45 in the afternoon and before this hearing was commenced to determine degree of the offense a waiver of a trial by jury was signed by Thomas Berry, Junior and also by the defendant Warren Hardy; and that an explanation of their Constitutional rights of a right to a trial by jury and a right to be represented by counsel was explained to both the respondents or both of the defendants and the record will show that both of these defendants appeared in court by their Court-appointed attorneys and were represented at this hearing. There doesn’t seem to be too much question that on this particular day that the two defendants together with another man by the name of Fisher came downtown in Detroit to the police department to see about application for an Operator’s License to drive a motor vehicle by Mr. Berry and shortly after that the two men, or two defendants in this case, went downtown or to another part of the city and on the way down there some discussion took place as to whether or not they wanted to get some money or whether or not Mr. Hardy wanted to get some money. And I believe the testimony here shows that he would like some money or had no objection to getting any money, so that later on and went into the store and Mr. Berry purchased a knife and I believe the testimony here was that this knife cost approximately one dollar; that later on when they were on their way I believe to further downtown or in that vicinity some talk was had about getting some money and Mr. Berry in his own statement that he made to police officers and in his statement that he made here from the witness stand he asked the defendant Hardy just how far did he want to go and at that time I believe went into a discussion as to the possibilities of what might happen when you are attempting a robbery of this nature or of the nature which they planned. And the testimony in this case was that Mr. Warren Hardy as far as he was concerned didn’t reply to whether he’d go a certain distance or how far he would go. And the testimony here varies or there isn’t any in any testimony as to a certainty as to which one of these two men, or defendants Thomas Berry, Junior or Warren Hardy went into the building first but it is testified to by both of the defend
 
 *1078
 
 ants in this case that Mr. Berry confronted the storeowner and said to him at that time that this was a robbery or to that effect and if he didn’t cause him any trouble he wouldn’t get hurt. So later on the testimony shows in this case that Mr. Hardy, that one of the defendants in this case was to go outside and look as to whether or not anybody was to come in the store and then on one or two occasions as the testimony indicated that Mr. Hardy came back into the store and was scolded by Mr. Berry and told to stay outside or to go back outside; that he did; that later on the testimony of Mr. Hardy was that he came back into the store and saw Mr. Berry with the knife at the deceased’s throat and told him not to kill him and that’s, at least, the testimony of Mr. Hardy as to making those remarks; that after Mr. Kourmadas was cut with the knife and it was determined by Mr. Berry or he was satisfied that the deceased was dead that he fell to the floor and that he had no chance of observing him that at that time his life expired or he died. And the testimony here as to what they did after stabbing Mr. Kourmadas that they went downtown or got into a taxi-cab and divided the money. The testimony here shows that Mr. Warren Hardy received what he says, I believe, $200.00. Mr. Berry done— Mr. Thomas Berry, Junior, says that he gave him $200.00 and twenty or twenty-five dollars so there might be a little dispute there or argument as to how much each one of these men received but it was approximated that the robbery netted in the neighborhood of 520 or $525.00.
 

 Now, counsel raises the argument here that Mr. Berry or Mr. Warren Hardy in getting his testimony here today testified that he saw actually the plunging of the knife into the throat of the deceased and that the deceased at that time wasn’t making any move, that he was standing still or perfectly still; and that is disputed or testimony from Mr. Thomas Berry, Junior, was to the effect that as he held the knife to the throat of Mr. Kourmadas that he lunged or made a move forward and when he did he turned around with his hand raised with the knife in it and that Mr. Kourmadas ran against and into this knife and as a result suffered a cut on the neck and as a result of that died.
 

 Now, as to whether or not there might be some discrepancies in the statements that were given by the defendants to the police officers the thing that strikes me and it wasn’t denied by the defendant Thomas Berry, Junior that he asked Mr. Hardy how far he would go or how far that they would go. It seems to me that that’s almost a fair indication that he intended to commit this offense and was considering going to any length in order to perpetrate it or to carry it out so then also the statute in this case provides in which the defendants are jointly charged and the purpose of the hearing today on the charge of homicide to determine or for the Court to determine what degree it was, whether it was first-degree murder, second-degree murder, or manslaughter and I read Section 750.316 of the Compiled Laws of 1948, Section 316: “First-degree murder or murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate, and pre-meditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary shall be murder of the first-degree and it shall be punished,” the punishment here referred to in this section of the law, that section of the statute, and the Court can’t help but feel that because of the testimony of the defendant in this case when he wanted to know how far the other defendant would go clearly indicates to this Court that his intention was to rob this place regardless of what had to be done and there can’t be any question that it carries out the elements of this crime of first-degree murder, so at this time after taking the testimony and evidence in this case the Court determined the degree of the offense in this case is murder in the first-degree as far as Thomas Berry, Junior is concerned.
 

 Now, we turn to more or less specifically to the defendant Warren Hardy. Now, maybe it’s hard to differentiate between the two men or whether or not they’re
 
 *1079
 
 equally guilty of the same thing but I think it is clear in this case or in the case of the defendant Warren Hardy or Hardy, that he had no intention of committing murder in this particular case although he did agree and take part in the robbery of this florist shop in which Mr. Kourmadas was killed and as the Court pointed out the testimony here was that Mr. Hardy came into this florist shop while this robbery was in progress and that he was ordered out of the building and told to go outside and wait and also that testimony here by Mr. Thomas Berry, Junior that when he asked him the question just how far he would go there was no reply or no response made to what he would do if it came to a question of killing somebody or taking the life of another person, so it just seems to me that both of these defendants do not stand before this Court in equal light. You have here a question of one defendant, Mr. Berry, being a man 29 years of age and having a police record as he testified to here before, one UDAA and another felony charge; while the defendant Hardy is a young man or a boy at the time of the crime of the age of 18 years. And the testimony in this case was that he was arrested, I believe, and convicted or pleaded guilty to two offenses of assault and battery. Now, if there was no premeditation or no intent to rob this store and to commit a crime of murder or to take somebody’s life then it’s pretty hard for this Court to say that both of these men stand before this Court in the same light. I am convinced by the testimony in this case that when this offense was discussed and when they went into this shop the Court’s convinced that Mr. Warren Hardy, the defendant, was not thinking or planning to rob this store with any idea of possibly with the commission of the offense of murder, so the Court feeling that he has not the intention of carrying out a crime that might result in the murder of anybody does not feel at this time that the Court would be justified in determining the degree of the, offense in this case of murder in the first-degree and it’s going to be the determination of this Court as far as Warren Hardy is concerned that the degree that the crime in this case is murder in the second-degree. And at this time the Court’s going to accept the pleas that were made here originally of murder of an open charge.
 

 [1]
 

 . M.C.L.A. § 750.318 provides:
 

 “The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree; but if such person shall be convicted by confession the court shall proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly . . . . ”
 

 Although the statute has not been repealed, I am informed that the open murder charge procedure following a guilty plea (which has been termed a “bastardized” proceeding because it combines a guilty plea with a mini-trial to a judge) is no longer used.
 

 [2]
 

 . Some of this history has been compiled by the parties and some of the relevant pleadings, orders and letters were filed by them. Other portions have been compiled by me. In particular, neither party advised that petitioner had previously filed two federal court petitions for writs of habeas corpus in April 1971 in this district and in July 1974 in the Western District of Michigan until petitioner testified at the testimonial hearing in April 1981. In addition, I discovered the existence of yet a third federal habeas petition predating those, having been filed in this district in July 1970. By obtaining all three federal files I procured copies of petitioner’s federal pleadings, as well as his August 1979 petition for habeas corpus in the Michigan Court of Appeals and his March 1970 complaint for superintending control in the Michigan Supreme Court, which were exhibits in the July 1970 federal habeas file.
 

 [3]
 

 . The events of May 18, 1964 are more fully described in Part 11(B),
 
 infra.
 

 [4]
 

 . All subsequent action was taken by petitioner in pro per until I appointed counsel to represent him in March 1981.
 

 [5]
 

 . This portion of the transcript (Tr. 2 — 4). is attached as Exhibit A.
 

 [6]
 

 . There was some reluctance on the part of co-defendant Hardy to testify. He was cross-examined by petitioner’s counsel (Tr. 108) as well as by the assistant prosecutor.
 

 [7]
 

 . This portion of the transcript (Tr. 74-75, 81-82) is attached as Exhibit B. Petitioner’s apparent misunderstanding that he could be found guilty of manslaughter on a plea of guilty to open murder is discussed in Part IV(C)(1),
 
 infra.
 

 [8]
 

 . For some unexplained reason petitioner was not charged with and thus could not be found guilty of first degree
 
 felony
 
 murder, which is defined along with premeditated murder in M.C.L.A. § 750.316:
 

 “All murder which shall be perpetrated by means of poison, lying in wait, or any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary, shall be murder in the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life.”
 

 The information charged that petitioner “feloniously, willfully and [with] malice aforethought, did kill and murder one Alexander F. Kourmadas . . . contrary to . . . [M.C.L.A.] § 750.316”, a charge of premeditated murder.
 

 [9]
 

 . The trial judge’s factual findings and conclusions (Tr. 150-57) are set forth in Exhibit C.
 

 [10]
 

 . Rules Governing Section 2254 Cases in the United States District Courts (hereinafter “Rule”).
 

 [11]
 

 . 28 U.S.C. § 2254(a) provides:
 

 "... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court
 
 only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.”
 
 (emphasis supplied).
 

 Moreover, the information clearly charges petitioner with a violation of M.C.L.A. § 750.-316, the statute defining
 
 first degree
 
 murder.
 
 See
 
 note 8,
 
 supra.
 

 [12]
 

 . Petitioner made this argument in his application to the Michigan Supreme Court to file a delayed appeal in January 1971, in his delayed motion for new trial in Recorder’s Court in February 1974 and in his first and second habeas petitions before Judge Keith in 1970 and 1971, respectively. At no time have the merits of the argument been discussed in a written opinion.
 

 [13]
 

 . This assumes the Sixth Amendment right to confront witnesses applies equally to a bench mini-trial to determine the degree of murder following a guilty plea to an open murder charge as to a trial following a not guilty plea. Neither party has addressed this issue.
 

 [14]
 

 . The standard for determining whether the evidence is sufficient to support a conviction was described by the Supreme Court in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979):
 

 “.. . [in] a challenge to a state criminal conviction brought under 28 U.S.C. Section 2254 .... The applicant is entitled to habeas relief if it is found upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.”
 

 Petitioner would thus have to demonstrate convincingly that the trial judge could not rationally have found premeditation, a necessary element for conviction of first degree murder under M.C.L.A. § 750.316, beyond a reasonable doubt from the evidence presented. 28 U.S.C. § 2254(d);
 
 Sumner v. Mata,
 
 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981);
 
 Delk v. Atkinson,
 
 665 F.2d 90 (6th Cir. 1981).
 

 The trial judge based his finding that petitioner was guilty of premeditation on Hardy’s statement that he was asked by petitioner before entering the flower shop if he wanted some money and having answered yes, was told by petitioner, “I don’t know how far you’d be willing to go” (Tr. 21). He also relied on petitioner’s testimony that he knew they could be shot during the robbery (Tr. 94) and on petitioner’s pre-trial statement that after grabbing the shopkeeper he told him “if he [didn’t] give us any trouble he wouldn’t get hurt” (Tr. 39). The trial judge also noted that petitioner had purchased the knife used during the robbery earlier that day. He concluded the evidence demonstrated petitioner was prepared on entering the flower shop to rob it “regardless of what had to be done” (Tr. 155) and thus had premeditated. I am constrained to observe that given the limited standard of review, this finding withstands the
 
 Jackson
 
 test.
 

 [15]
 

 . By my count this argument has been made in one form or another seven times in the Michigan courts and three times in federal habeas. The only substantive response in a written opinion came in Judge Keith’s opinion denying petitioner’s second petition for habeas relief in June 1971, quoted in Part 11(A),
 
 supra.
 

 [16]
 

 . See note 14,
 
 supra.
 

 [17]
 

 .
 
 See
 
 note 14,
 
 supra.
 
 Given my conclusion in note 14 that the trial judge’s finding of premeditation withstands constitutional scrutiny under
 
 Jackson,
 
 it is apparent that the implicit factual finding by the trial judge that petitioner intended to kill the shopkeeper also passes the
 
 Jackson
 
 test.
 

 [18]
 

 . Of course petitioner or his counsel could always have asked to withdraw the guilty plea in light of petitioner’s claim he had no intent to kill, but no such request was made.
 

 The “bastardized” nature of the open murder procedure, involving both a plea and a testimonial hearing and fact-finding by the trial judge, makes analysis of the plea different than the normal plea proceeding where the accused pleads guilty to a specific charge and a judgment of conviction on that charge is then entered. That difference has not always been appreciated by petitioner or his current counsel.
 

 [19]
 

 . Nor is
 
 Henderson v. Morgan,
 
 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), also relied on by petitioner, on point. In that case the accused pleaded guilty to second degree murder after being indicted for first degree murder, thereby pleading guilty to a crime not charged in the indictment. The plea was held invalid because petitioner, who had obvious psychological problems, was not informed that intent was an element of second degree murder. In this case petitioner pleaded guilty to an open charge of murder which carried the possibility of conviction of the crime charged in the information, no psychological impairments are claimed and petitioner’s testimony reveals he knew intent was an element of murder.
 

 [20]
 

 . These portions of petitioner’s testimony appear in Exhibits A and B.
 

 [21]
 

 .
 
 See
 
 note 8,
 
 supra.
 

 [22]
 

 .
 
 See
 
 Exhibit C.
 

 [23]
 

 . In one form or another petitioner makes this allegation in his complaint for a writ of habeas corpus in the Michigan Court of Appeals, August 29, 1969 at 19, in his complaint for superintending control in the Michigan Supreme
 
 *1074
 
 Court, March J5, 1970 at 7 and in his second federal habeas petition before Judge Keith, April 2.1, 1971 at- 2-, 6 and 18.
 

 That petitioner knew he could be convicted of first degree murder and that he could not be-convicted of manslaughter on the basis of his plea have been discussed in Part IV(C)(1),
 
 supra.- ■
 

 [24]
 

 . Also noteworthy in this regard in petitioner’s prior criminal record referred to earlier (he had been in the State Prison of Southern Miohi- ■ gan at Jackson and the Michigan Reformatory at Ionia for eleven years prior to this conviction) and his failure to object or make any statement to the sentencing judge after a life sentence was pronounced on July 2, 1964.
 

 [25]
 

 . A contrary conclusion would require me to ; in effect sit in judgment on Judge Keith’s opinion of June 29, 1971, quoted in Part 11(A),
 
 supra.
 
 While res judicata need not be applied in habeas corpus proceedings,
 
 Sanders v. United States,
 
 373 U.S. 1, 83 S.Ct. 1068,-10 L.Ed.2d 148 (1963), especially here in light of the fact that petitioner now has counsel as discussed in Part III(B),
 
 supra,
 
 my review is in accord with Judge Keith’s conclusions reached after his review of the record of the May 18, 1964 proceeding.